715 F.2d 134
 2 Soc.Sec.Rep.Ser. 445
 Eula B. STARNES, Johnnie Kaye Lloyd, Nettie E. Clarkson,
Jayne E. Dunlap, individually and on behalf of others
similarly situated; Julian Adams, M.D., Fred H. Allen, Jr.,
M.D., William H. Stuart, M.D., Rhett O. Talbert, M.D.,
Atlanta Neurological Clinic, P.C., C.T. Scanlab and Trident
Neuroimaging Laboratory, individually and on behalf of
others similarly situated, Appellees,
v.
Richard S. SCHWEIKER, Secretary of Health and Human
Services, Appellant,
and
Prudential Insurance Company of America and Blue Cross and
Blue Shield of South Carolina, Inc., individually
and on behalf of others similarly
situated, Defendants.
 No. 82-1543.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 10, 1983.
Decided Aug. 16, 1983.
 
 Leslie L. Clune, Dept. of Health & Human Services, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Henry Dargan McMaster, U.S. Atty., Columbia, S.C., Juan A. del Real, Gen. Counsel, Lynne K. Zusman, Deputy Gen. Counsel, Litigation, Washington, D.C., on brief), for appellant.
 John H. Parker, Jr., Atlanta, Ga. (J. Marbury Rainer, Parker, Hudson & Rainer, Atlanta, Ga., Alexander M. Sanders, Jr., Sanders & Quackenbush, Columbia, S.C., on brief), for appellees.
 Before WINTER, Chief Judge, PHILLIPS, Circuit Judge, and MERHIGE,* District Judge.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 We granted leave to take this interlocutory appeal to settle the question of whether the district court had jurisdiction to decide procedural, substantive and constitutional challenges to benefit levels set by the Secretary of Health and Human Services to guide private insurance carrier benefit determinations under Part B of the Medicare statute. The district court ruled that it had jurisdiction. It exercised its jurisdiction, however, only to grant a preliminary injunction based upon a prima facie showing of a procedural deficiency in the manner in which the Secretary proceeded, reserving judgment on the substantive and constitutional challenges.
 
 
 2
 We conclude that the district court has jurisdiction either under 28 U.S.C. § 1331 or, under the mandamus statute, 28 U.S.C. § 1361. Accordingly, we affirm the judgment of the district court.I.
 
 
 3
 Part B of the Medicare Program is a voluntary medical insurance program for the aged and disabled, funded by monthly premiums and contributions from general revenues of the federal government. Part B supplements the general coverage of Part A by insuring against some medical expenses not covered by the latter. Determinations of benefits paid for Part B coverage are made by private insurance carriers employed by the Secretary in accordance with regulations and policy guidelines issued by the Secretary. Persons to whom Part B is applicable are entitled to reimbursement of 80 percent of the "reasonable charge" for covered medical services, including physicians' services. 42 U.S.C. § 1395k. Under the Medicare Act, the Secretary's determinations as to eligibility for benefits under Parts A and B are administratively reviewable, as are his determinations of benefits under Part A if the amount in controversy exceeds $100, with a right of judicial review. 42 U.S.C. § 1395ff. No determination of the amount of benefits under Part B is administratively or judicially reviewable. Once a carrier determines benefits owed to a claimant, they are actually paid out of a government trust fund.
 
 
 4
 Plaintiffs are (a) Medicare beneficiaries enrolled in Part B of the Medicare Program, and (b) physicians and clinics which provide computerized tomography ("CT") scans to the class of Medicare patients which the Medicare beneficiary plaintiffs represent. Plaintiffs brought this class action to challenge the establishment and implementation by the Secretary of nationwide and regional ceilings or caps on Part B reimbursements for CT head scans. Through several letters or memoranda the Secretary has established a national ceiling on reimbursement for such services. In June 1977, the Regional IV Office (Atlanta) sent letters to all Part B carriers in Region IV proposing that no more than $150 be paid for CT head scans. In December 1977 a memorandum was issued to all Regional Medicare Directors indicating that $150 was a reasonable charge for CT scans. In September 1978 the nationwide caps were adjusted by a letter issued to all insurance carriers which indicated that a reasonable charge for CT scans should range from $157.50 to $172.50, with the amount allowed in a particular case to depend upon whether contrast enhancement was used in the scan.
 
 
 5
 The named plaintiffs unsuccessfully exhausted their administrative remedies before bringing this action to challenge the directives. They appealed benefit determinations to carrier-appointed hearing officers, the only administrative remedy provided under the Act, 42 U.S.C. § 1395u(b)(3)(C), and they have informally petitioned the Secretary and the Regional Offices for relief from the caps. The Secretary and his subordinates have been steadfast in enforcing the caps, although the Secretary's counsel advised that the Secretary should proceed in accordance with the Administrative Procedure Act and "make a case in the rulemaking record" why the caps selected are reasonable.
 
 
 6
 Plaintiffs challenge the cap on a number of grounds. They contend that the Secretary's informal letters, directives and memoranda establishing the caps constitute rulemaking without notice and opportunity for comment, in violation of the Administrative Procedure Act. 5 U.S.C. § 553(b). They contend that the caps violated their equal protection and due process rights by depriving them of property rights without notice or opportunity for comment and by arbitrarily and unreasonably imposing a different standard for the determination of CT scan benefits than is used for the determination of other Part B benefits. They contend that the caps are inconsistent with the Medicare Act's requirement that carriers, and not the Agency, determine the reasonableness of charges on which benefits to be paid to claimants are computed. And, they assert that the caps violate the requirement that the customary and prevailing charge be paid for Part B services. They seek an injunction against enforcement and implementation of the caps and a direction to the Secretary that she withdraw the caps, advise all Part B carriers of their withdrawal and require all carriers who have applied the caps to recompute claims and make additional payments with interest where indicated. As supplemental relief plaintiffs request costs and attorneys' fees.
 
 
 7
 On March 6, 1980, the district court ruled that it had jurisdiction over all of plaintiffs' claims, concluded the caps were promulgated in violation of the APA's rulemaking requirements, and preliminarily enjoined their implementation nationwide until regulations authorizing such caps were properly promulgated. The district court reaffirmed its jurisdictional holding on April 16, 1982, reserving ruling on plaintiffs' other contentions, and certified the question for appeal to this court. We granted leave to maintain it.
 
 II.
 
 8
 Plaintiffs allege jurisdiction in the district court by virtue of 28 U.S.C. § 1331 (federal question jurisdiction), § 1346 (suits against the United States involving federal questions), and § 1361 (mandamus jurisdiction). They also allege jurisdiction under 5 U.S.C. §§ 701-706, the Administrative Procedure Act, but it is well-settled that that Act contains no independent grant of jurisdiction. See, Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Thus we consider, first, if there is federal question jurisdiction, and, second, if there is jurisdiction to grant a writ of mandamus. The Secretary argues that federal court jurisdiction is barred by two provisions of the Medicare Act, 42 U.S.C. § 1395ff and 42 U.S.C. § 1395ii. We discuss them seriatim.
 
 A. 42 U.S.C. § 1395ff
 
 9
 As we have previously described, § 1395ff provides that the Secretary shall determine eligibility for the Part A and Part B programs and benefit amounts for the Part A program, and that judicial review of these determinations may be had pursuant to 42 U.S.C. § 405(g). It does not, however, empower the Secretary to determine benefit amounts under the Part B program, nor does it provide for judicial review of carrier determinations.[1] Instead, Part B benefit determinations are made by private insurance carriers and are appealable only to carrier-appointed hearing officers. 42 U.S.C. § 1395u.
 
 
 10
 In two recent cases, the Supreme Court has addressed this scheme. In United States v. Erika, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), it held that § 1395ff forbade judicial review of Part B benefit amount determinations made by carriers. And, in Schweiker v. McClure, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982), it found no due process violation in the use of carrier-appointed hearing officers to resolve disputes over benefit amounts and in the denial of a right to de novo administrative review of their determinations.
 
 
 11
 We find nothing in the language of § 1395ff nor in the Supreme Court's opinion in Erika to suggest that the Secretary's administration of the Part B program, as distinguished from the correctness of benefit determinations thereunder, should not be subject to judicial oversight. The language of § 1395ff indicates that Congress sought to preserve judicial review of actions taken by the Secretary, but not actions taken by private carriers. Section 1395ff renders reviewable those actions to be performed by the Secretary--Part A benefit amount determinations and Part A and Part B eligibility determinations--while those actions which are delegated to private carriers--Part B benefit amount determinations--are made unreviewable. In the discussion of the section in the Act's legislative history, only benefit amount determinations are said to be unreviewable, and in each instance it is also noted that private carriers, and not the Secretary, are responsible for those determinations.[2]
 
 
 12
 Erika held that particular carrier benefit determinations are unappealable. The Court phrased the question presented there as whether there is "jurisdiction to review determinations by private insurance carriers of the amount of benefits payable under Part B of the Medicare statute." 456 U.S. at 205-208, 102 S.Ct. at 1653-1654, 72 L.Ed.2d at 17-18. And it agreed with the position that the United States had taken in the case that "Congress, by enacting the Medicare statute ... specifically precluded review in the Court of Claims of adverse hearing officer determinations of the amount of Part B payments." 456 U.S. at 206-207, 102 S.Ct. at 1653-1654, 72 L.Ed.2d at 17-18. Moreover, McClure suggests that some degree of judicial oversight of the Part B program is preserved, despite § 1395ff, for the Supreme Court assumed without discussion that it possessed jurisdiction to hear a constitutional challenge to the benefit determination procedures provided by Congress.
 
 
 13
 Erika does, however, compel the conclusion that a plaintiff cannot seek to reopen a benefit determination by challenging a regulation or some other action by the Secretary which influenced it. The suit in Erika was brought by a distributor of kidney dialysis supplies to challenge the implementation by an insurance carrier of a regulation defining the reasonable charge for a service on the basis of its price in the year prior to the year in which the service was rendered. The Court of Claims concluded that the regulation was invalid, and directed the carrier to recalculate benefits owed to the plaintiff by some more accurate method. Erika, Inc. v. United States, 634 F.2d 580, 589 (Ct.Cl.1980). In finding the Court of Claims to be without jurisdiction, then, the Supreme Court implicitly held that a carrier benefit determination could not be reopened even though it was alleged to be unlawful because of some action by the Secretary.
 
 
 14
 McClure, however, strongly suggests that a benefit determination may be reviewed and reopened when the alleged infirmity is constitutional in nature. In that case the Supreme Court both assumed that it possessed jurisdiction over a due process challenge to the procedures followed in prior determinations and left open the door to future constitutional challenges to benefit determinations when it could be proven that the carrier-appointed hearing officer was biased. 456 U.S. at 195-198, 102 S.Ct. at 1670-1671, 72 L.Ed.2d at 8-9. The issue was not addressed in Erika, for while a constitutional claim had been made below it was held to be insubstantial and was not pressed before the Supreme Court. 456 U.S. at 206 n. 5, 102 S.Ct. at 1653 n. 5, 72 L.Ed.2d at 17 n. 5.
 
 
 15
 Prior to Erika there was universal agreement that actions by the Secretary and even private carriers could be assailed on constitutional grounds in either a district court, Kechijian v. Califano, 621 F.2d 1 (1 Cir.1980); Pushkin v. Califano, 600 F.2d 486 (5 Cir.1979); Cervoni v. Secretary of Health, Ed. & Welfare, 581 F.2d 1010 (1 Cir.1978); St. Louis Univ. v. Blue Cross Hosp. Serv., 537 F.2d 283 (8 Cir.) cert. den. sub nom. Faith Hospital Assoc. v. Blue Cross Hosp. Serv., Inc., 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976), or the Court of Claims, Bussey v. Harris, 611 F.2d 1001 (5 Cir.1980); Drennan v. Harris, 606 F.2d 846 (9 Cir.1979). We see no reason to depart from this position for there is no indication in the Act's legislative history that Congress intended a result so drastic as, by the enactment of § 1395ff, to preclude judicial enforcement of the Constitution with respect to the administration of the Part B Program of Medicare. Thus to immunize the Secretary and the carriers from the Constitution's mandate would raise a constitutional question of the gravest sort, and we decline to adopt such an interpretation unless that is clearly the will of Congress. See Weinberger v. Salfi, 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975); Johnson v. Robison, 415 U.S. 361, 366-367, 373, 94 S.Ct. 1160, 1165-1166, 1168, 39 L.Ed.2d 389 (1974).
 
 
 16
 In sum, we hold § 1395ff does not restrict whatever right the plaintiffs may have to seek prospective relief from the Secretary's actions, but that it does bar the reopening of past benefit determinations on other than constitutional grounds.
 
 B. 42 U.S.C. § 1395ii
 
 17
 Federal question jurisdiction would undoubtedly exist but for the possible bar of 42 U.S.C. § 1395ii which incorporates 42 U.S.C. § 405(h) into the Medicare Act. Specifically, § 1395ii states that "(t)he provisions ... of subsection ... (h) ... of Section 405 of this title, shall also apply with respect to this subchapter to the same extent as they are applicable with respect to subchapter II of this chapter." Section 405(h), thus made applicable, states:
 
 
 18
 The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.
 
 
 19
 The precise meaning and scope of § 405(h) has been the subject of a large and ever-expanding body of case-law. Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), is the first and most significant authority. There the Supreme Court held that a constitutional challenge to a duration of relationship requirement of the Social Security Act was a claim "arising under" the Act, which § 405(h) removed from federal question jurisdiction under 28 U.S.C. §§ 1331 and 1346. In reaching this result, the Court interpreted § 405(h) literally, to bar use of § 1331 as a jurisdictional basis for any claim arising under the Social Security Act. Id. at 757, 95 S.Ct. at 2462. It found that the challenge to the Act's duration of relationship eligibility requirement did arise under the Act since the plaintiffs ultimately sought to recover Social Security benefits and the Act provided them with "both the standing and the substantive basis for the presentation of their constitutional claims." Id. at 760-761, 95 S.Ct. at 2464-2465. Perhaps significantly, the Act did provide another mechanism for raising the question, and the Court ruled that jurisdiction existed to review the individual plaintiff's claim under 405(g). Id. at 763-767, 95 S.Ct. at 2465-2467.
 
 
 20
 Since Salfi the Supreme Court has had occasion to discuss § 405(h) in several other cases. Generally, the Court has held it to bar use of § 1331 as a jurisdictional basis for Social Security Act claims while expanding the possibilities for judicial review and relief under § 405(g). Thus, in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court held that a due process challenge to disability benefit termination procedures was a claim "arising under" the Act which could only be presented under § 405(g). But, it sustained jurisdiction over Eldridge's claim by interpreting the exhaustion requirement of that section to be waivable so long as a claim for benefits was submitted to the Secretary. In Norton v. Mathews, 427 U.S. 524, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976), it deemed a constitutional challenge brought by an illegitimate child to certain dependency provisions to be so insubstantial that it could be rejected on the merits without deciding whether there was jurisdiction over the case. In Califano v. Sanders, supra, it held the APA was not an independent jurisdictional basis for claims arising under the Social Security Act. In Califano v. Yamasaki, 442 U.S. 682, 689, 99 S.Ct. 2545, 2551, 61 L.Ed.2d 176 (1979), it held that class actions and nationwide injunctive relief were permissible under § 405(g). In Schweiker v. McClure, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982), the Court assumed, without discussion, that it possessed jurisdiction over a constitutional challenge to benefit determination procedures. Finally, in United States v. Erika, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), it held that § 1395ff of the Act barred appeals of Part B benefit determinations, and did not consider § 405(h).
 
 
 21
 Plaintiffs argue that these precedents do not foreclose their contention that § 1331 jurisdiction exists to redress the Secretary's violation of APA, and we agree. There is persuasive authority for that proposition and we conclude to follow it.[3] See, e.g., National Association of Home Health Agencies v. Schweiker, 690 F.2d 932 (D.C.Cir.1982); Daniel Freeman Memorial Hosp. v. Schweiker, 656 F.2d 473 (9 Cir.1981); Humana of South Carolina, Inc. v. Califano, 590 F.2d 1070, 1080 (D.C.Cir.1978); St. Louis Univ. v. Blue Cross Hosp. Serv., 537 F.2d 283, 291-294 (8 Cir.); cert. den. sub nom. Faith Hosp. Ass'n v. Blue Cross Hosp. Serv., Inc., 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976). But see Hadley Memorial Hosp., Inc. v. Schweiker, 689 F.2d 905, 910-12 (10 Cir.1982). These cases limit the bar of § 405(h) to claims brought to recover benefits and permit the exercise of § 1331 jurisdiction to adjudicate any other right for which no alternative form of judicial relief is available.
 
 
 22
 The Home Health Agencies case is one of the most persuasive in this line of authorities. It is also one of the latest and it collects all of the pertinent authorities extant at the time it was decided. There, numerous home health agencies and a trade association attacked the validity of regulations requiring home health agencies to seek medicare reimbursement determinations and payment from government-designated regional intermediaries. Because there was no statutory right of judicial review, they sought to invoke federal question jurisdiction to adjudicate their claims that the Secretary had illegally violated the Medicare Act, the APA and denied them due process in promulgating the regulation. As to the jurisdictional issue, the court of appeals held that, in the absence of a statutory right of judicial review, the district court had federal question jurisdiction to decide the issues on their merits, and, moreover, the lack of a statutory right of judicial review, did not evidence congressional intent to deny federal question jurisdiction. It stressed that there was no legislative history to indicate that, by the enactment of § 405(h), Congress intended to preclude federal question jurisdiction other than in those instances when an alternative statutory right of judicial review had been established, and that the exercise of federal question jurisdiction was not counter to the purpose of § 405(h). Finally it ruled that the fact that Congress had provided for a statutory right of review in other instances did not overcome the general presumption in favor of judicial review.
 
 
 23
 As we view plaintiffs' complaint, the gravamen of their action with respect to the alleged violation of APA, the alleged violation of the Medicare Act and the alleged violation of their constitutional rights,[4] is to redress those violations. Of course a well-founded complaint in that regard has a secondary effect on the benefits and payments due them. It may well be true that the effect of the preliminary injunction suspending enforcement of the caps granted by the district court entitles plaintiffs to be paid more than they would receive were the caps being enforced. But we do not perceive the suit essentially one to recover benefits; it is a suit to enforce lawful conduct on the part of the Secretary. Cf. Ringer v. Schweiker, 684 F.2d 643, 646 (9 Cir.1982). We hold therefore that federal question jurisdiction existed in the district court.
 
 III.
 
 24
 We recognize that, in deciding that federal question jurisdiction exists to litigate plaintiffs' procedural challenge, we decide a close case. It may well be that a higher reviewing court may be of the opinion that we have misconstrued §§ 1395ff or 405(h) or the authorities which have considered them. But if there is not federal question jurisdiction to decide plaintiffs' challenges, then we think that there is mandamus jurisdiction under 28 U.S.C. § 1361 to do so.
 
 
 25
 The federal mandamus statute, added by the Mandamus and Venue Act of 1962, provides an independent grant of jurisdiction to compel an officer or employee of the United States to perform a duty owed to the plaintiff. See 28 U.S.C. § 1361. As collected in Ellis v. Blum, 643 F.2d 68, 78-82 (2 Cir.1981), there is an impressive array of cases holding that § 1361 provides a jurisdictional basis to review procedures employed in administering social security benefits.[5] Three, Ellis v. Blum, supra, White v. Mathews, 559 F.2d 852, 856 (2 Cir.1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); and Barnett v. Califano, 580 F.2d 28 (2 Cir.1978), have held that § 405(h) does not preclude mandamus jurisdiction to review the Secretary's procedures in disability cases. They reason that § 1361 does not come within the literal scope of § 405(h) either as it currently stands--it refers only to sections 1331 and 1346--or as it was originally enacted--it then forbade utilization of all jurisdictional provisions contained in section 41 of Title 28, but mandamus jurisdiction at that time was vested solely in the District of Columbia by virtue of the Act of February 27, 1802, 2 Stat. 103. Moreover, they note that preserving mandamus jurisdiction is not contrary to the purpose of § 405(h), which is to prevent circumvention of the jurisdictional provisions provided by the Medicare Act, since it will only lie if no other remedy is available to the plaintiff.
 
 
 26
 We think that these holdings are applicable here. We held in Burnett v. Tolson, 474 F.2d 877 (4 Cir.1973), that mandamus will lie when there is (a) a clear right on the part of the plaintiffs to the relief sought, (b) a clear duty on the part of the defendant to do the act in question, and (c) no other adequate remedy available. These conditions may all be met here, the third being met if we are incorrect in our conclusion that jurisdiction under § 1331 lies, notwithstanding § 405(h). Certainly the third condition is also met because plaintiffs have exhausted all administrative remedies available to them as well as having unsuccessfully pursued some informal extra-judicial ones.[6]
 
 
 27
 Even if jurisdiction rests solely on § 1361, we think that the grant of interim injunctive relief was proper. Mandamus jurisdiction under § 1361 permits flexible remedies, including injunctive or declaratory relief. Crawford v. Cushman, 531 F.2d 1114, 1126 (2 Cir.1976); Burnett v. Tolson, supra, 474 F.2d at 883. Although the question is relatively novel, we see no reason why a preliminary injunction should not also be available in an appropriate case, and in one case reported, preliminary relief was awarded on the basis of mandamus jurisdiction. See Dull Knife v. Morton, 394 F.Supp. 1299 (D.S.D.1975). That the preliminary injunction may have the effect of increasing benefit payments for CT head scans until the caps are properly promulgated is no objection to its issuance. A court acting under mandamus jurisdiction may compel the payment of benefits by the government. See, e.g., White v. Mathews, supra; Nat'l Treasury Employees Union v. Nixon, 492 F.2d 587 (D.C.Cir.1974). We express no view, however, as to whether the district court may also compel the retroactive payment of increased benefits. That issue is not yet before us because the district court only barred the implementation of the caps prospectively. Cf. Nat'l Treasury Employees Union v. Nixon, supra (retroactive pay increase may be ordered); De Lao v. Califano, 560 F.2d 1384 (9 Cir.1977) (doctrine of sovereign immunity bars retroactive order).
 
 
 28
 AFFIRMED.
 
 
 
 *
 Hon. Robert R. Merhige, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 Section 1395ff provides:
 (a) The determination of whether an individual is entitled to benefits under part A or part B of this subchapter, and the determination of the amount of benefits under part A of this subchapter, shall be made by the Secretary in accordance with regulations prescribed by him.
 (b)(1) Any individual dissatisfied with any determination under subsection (a) of this section as to--
 (A) whether he meets the conditions of section 426 or 426a of this title, or
 (B) whether he is eligible to enroll and has enrolled pursuant to the provisions of part B of this subchapter, or section 1395i-2 of this title or section 1819, or
 (C) the amount of benefits under part A of this subchapter (including a determination where such amount is determined to be zero)
 shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.
 (2) Notwithstanding the provisions of subparagraph (C) of paragraph (1) of this subsection, a hearing shall not be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $100; nor shall judicial review be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $1,000.
 (c) Any institution or agency dissatisfied with any determination by the Secretary that it is not a provider of services, or with any determination described in section 1395cc(b)(2) of this title, shall be entitled to a hearing thereon by the Secretary (after reasonable notice and opportunity for hearing) to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.
 
 
 [2]
 The Senate Report stated: "Under the supplementary plan, carriers, not the Secretary, would review beneficiary complaints regarding the amount of benefits, and the bill does not provide for judicial review of a determination concerning the amount of benefits under Part B where claims will probably be for substantially smaller amounts than under Part A." S.Rep. No. 404, 89th Cong., 1st Sess., [1965] U.S.Code Cong. & Admin.News 1943, 1975. When § 1395ff(b) was amended in 1972, Congress re-emphasized the absence of judicial review on Part B determinations, again noting the Secretary was not responsible for these decisions. The House Report on the amendments stated: "There is no authorization for an appeal to the Secretary or for judicial review on matters solely involving amounts of benefits under Part B ..." H.R.Rep. No. 92-1605, 92d Cong.2d Sess. 61 (1972), U.S.Code Cong. & Admin.News 1972, pp. 5370, 5394. From this, we discern that Congress unmistakably intended that carrier determinations be unreviewable
 
 
 [3]
 Both in Mathews v. Eldridge, 424 U.S. 319, 327, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976) and Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), it was assumed that a due process challenge to benefit termination procedures, and a challenge to the Secretary's refusal to reopen a disability determination, respectively, were barred by § 405(h). We cannot read either case as a square holding to that effect, especially since the claimant in Mathews had sought a reinstatement of benefits as an inseparable part of his procedural claim. See Humana, 590 F.2d at 1080-81 n. 76. We also note Hopewell Nursing Home, Inc. v. Schweiker, 666 F.2d 34, 39 (4 Cir.1981). There we held that a claim fell within the scope of § 405(h), even though the requested relief was an order that benefits be recomputed and not necessarily increased, since the plaintiff's ultimate objective, in fact, was to increase its benefits. In that case the plaintiff had made several procedural claims in the district court, but they were not pressed on appeal and we did not rule on them
 
 
 [4]
 The allegation that there is a constitutional right to notice and opportunity to comment when an agency makes rules of general applicability is frivolous. It presents no substantial procedural constitutional claim. See, e.g., Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 542 n. 16, 98 S.Ct. 1197, 1211 n. 16, 55 L.Ed.2d 460 (1978)
 
 
 [5]
 The Supreme Court has left open the question whether § 405(h) prohibits reliance on § 1361 as a jurisdictional basis for cases arising under the Social Security Act. Califano v. Yamasaki, 442 U.S. at 697-698, 99 S.Ct. at 2555-2556; Norton v. Mathews, 427 U.S. at 529-530, 96 S.Ct. at 2774-2775. Mathews v. Eldridge, 424 U.S. at 332 n. 12, 96 S.Ct. at 901 n. 12. But see Califano v. Sanders, 430 U.S. at 111, 97 S.Ct. at 987 (Burger, C.J., and Stewart, J., concurring) (§ 405(h) limits jurisdiction to claims properly brought under § 405(g))
 
 
 [6]
 This conclusion does not conflict with our earlier decision in Hopewell Nursing Home, Inc. v. Schweiker, 666 F.2d 34 (4th Cir.1981). In that case, we held that mandamus jurisdiction did not lie because the second condition was not met; it was "difficult to imagine how the Secretary could have failed to perform a duty owed the providers--i.e., granting them a final decision on their claims--when they have not given him an opportunity to do so by availing themselves of the administrative process." Id. at 42. We thus indicated that mandamus jurisdiction was unavailable to those plaintiffs who failed to exhaust administrative remedies, absent a showing that the Secretary frustrated exhaustion by failing to act on the plaintiff's administrative claims. The named plaintiffs here, however, have exhausted their administrative remedies