**COLONIAL PENN INSURANCE COMPANY, Appellant,**

**v.**

**Margaret HECKLER, Secretary of Health and Human Services, Appellee.**

No. 83–1385.

United States Court of Appeals, Third Circuit.

Argued Sept. 12, 1983.

Decided Nov. 16, 1983.

As Amended Nov. 28, 1983.

Rehearing Denied Dec. 8, 1983.

---

Harvey Bartle, III (argued), Jeffrey G. Weil, Sarah Wiggins Mitchell, Dechert Price & Rhoads, Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Virginia Powel, Asst. U.S. Atty., E.D. Pa., Diane C. Moskal, Regional Atty., James C. Newman (argued), Asst. Regional Atty., James S. Feight, Jr., Asst. Regional Atty., Philadelphia, Pa., for appellee.

Before WEIS, HIGGINBOTHAM, and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Congress amended the Medicare Act to provide that benefits would not be available when an individual's medical expenses could be paid under an automobile insurance policy. Because of unforeseen losses that would be caused by this change, the plaintiff insurance company sought an injunction and declaratory relief against application of regulations implementing the statute. The district court held that it did not have jurisdiction over the challenge to the regulations except for the constitutional claims by way of mandamus. We conclude that all claims were properly before the court, that plaintiff has standing, but, nevertheless, we agree that plaintiff is not entitled to relief. Accordingly, the dismissal by the district court will be affirmed.

Colonial Penn Insurance Company applied to the district court for injunctive and declaratory relief from regulations stating that Medicare benefits would be secondary to coverage provided by automobile insurance policies. Plaintiff objected to the regulations because they required the company to make unanticipated payments on claims arising under previously issued policies. The district court dismissed statutory challenges to the regulations for lack of subject matter jurisdiction and dismissed all others for failure to state a claim.

The plaintiff's complaint alleges that its yearly insurance policies cover medical and hospital expenses for injuries received in automobile accidents. The contracts either comply with state "no-fault" statutes or contain a medical payment clause as part of an automobile liability policy.

Colonial Penn writes policies for many persons over age 65, and concentrates on that segment of the population in its sales promotion. The policies, which are reviewed or approved by the various state insurance departments, provide that payments for medical expenses shall be made only to the extent that they are not covered by Medicare. Because medical expense coverage is secondary to Medicare, the company has been able to offer lower insurance premiums to senior citizens.

In December 1980, as part of the Omnibus Budget Reconciliation Act of 1980, Congress amended section 1862(b) of the Social Security Act, 42 U.S.C. § 1395y, to realign coverage under the Medicare program. Pub.L. 96–499, § 953, 94 Stat. 2599, 2647 (1980). As modified, the statute states that Medicare payments would not be available "with respect to any item or service to the extent that payment has been made, or can reasonably be expected to be made (as determined in accordance with regulations) ... under an automobile or liability insurance policy ... or under no fault insurance. Any [Medicare] payment ... shall be conditioned on reimbursement...." 42 U.S.C. § 1395y(b)(1). The amendment, which became effective on December 5, 1980, was designed to make "medicare payment liability secondary in automobile insurance cases." H.Rep. No. 1167, 96th Cong., 2d Sess. 352 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 5526, 5717.

On May 17, 1982, the Secretary published proposed regulations to carry out the provisions of the amendment, 47 Fed.Reg. 21103 (1982), and issued final regulations on April 5, 1983, 48 Fed.Reg. 14802 (1983). They provided that Medicare payments would not be made for services covered by an automobile insurance policy, even though the policy states that its benefits are secondary to Medicare. 48 Fed.Reg. at 14810 (to be codified at 42 C.F.R. § 405.323(b)). The regulations also authorized the Secretary to sue an insurance carrier for reimbursement if Medicare benefits were made to a person eligible for coverage under an auto insurance policy. *Id.* (to be codified at 42 C.F.R. § 405.323(c)(3)(iii)). The regulations apply to services required because of accidents occurring after December 5, 1980, *id.* at 14809 (to be codified at 42 C.F.R. § 405.-322(a)), but furnished on or after June 6, 1983, *id.* at 14810 (to be codified at 42 C.F.R. 405.323(a)). *See also* 48 Fed.Reg. at 14807.

The regulations became effective on May 5, 1983, and on May 25, Colonial Penn filed suit in the district court. The insurer alleged that the rules operated retroactively because they increased the insurer's coverage responsibilities under policies issued before promulgation of the regulations. Premiums had been set on the assumption that Medicare would provide primary coverage and thus pay most of the medical expenses of senior citizens injured in automobile accidents. Colonial Penn asserted that, as a result of the shift in coverage, it would be required to make substantial additional expenditures. Moreover, the company pointed out that its policies were written in conformance with state law. Without the approval of the state insurance departments, the contracts could not be changed to recognize the insurer's increased exposure.

Colonial Penn alleged the regulations effected a rewriting of its policies that deprived the company of its property without due process and constituted a taking in violation of the fifth amendment. The company also asserted that the regulations contravened the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–12, and misinterpreted the amendment to the Medicare provision. The carrier sought, *inter alia*, an order enjoining application of the regulations to any policy issued before June 6, 1983, and a declaration that the amendment and regulations were not applicable to policies in force before June 6, 1983.

The district court concluded that the insurance company might "very well" have standing because of the threat of actual injury. Finding jurisdiction in the mandamus statute to consider the constitutional challenges, the court determined however that no valid claims were presented. The district judge also held that as to the statutory attack, the regulation was "probably shielded from judicial review under the provisions of the statute itself."

On appeal, Colonial Penn argues that federal courts have jurisdiction over the statutory and constitutional claims and that on both bases a preliminary injunction should have issued.

### I.

We turn first to the question of standing. At issue are alleged property rights of the insurer in existing contracts.

According to the complaint, the regulations will impose a "severe economic detriment" on Colonial Penn and eliminate its "allowable profit margin in a number of states." The company also produced testimony at the hearing establishing that its assumption of primary liability for medical payments would result in losses in excess of three and one-half million dollars. Plaintiff alleges that this amount is unlikely to be recouped from added premium charges for policies issued at a later date because of the reluctance of state insurance commissions to allow a premium increase to compensate for past losses. There is present, therefore, the direct threatened injury traceable to the challenged action essential to confer standing. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). *See also Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970) (loss of future profits and business establishes "injury in fact").

Having determined that Colonial Penn meets the constitutional requirement of standing, we look to see whether it has met the prudential consideration that the right asserted be within the zone of interests, arguably protected or regulated by the statute. *See generally, Kirby v. United States Government, Department of Housing & Urban Development,* 675 F.2d 60, 64–67 (3d Cir.1982); *Bowman v. Wilson,* 672 F.2d 1145, 1150–1153 (3d Cir.1982). Some doubt has been expressed on the continued vitality of the zone of interest analysis. *See* 4 K. Davis, ADMINISTRATIVE LAW TREATISE § 24:17 (2d ed. 1983). Nevertheless, the Supreme Court's reaffirmation of the test in *Valley Forge Christian College,* 454 U.S. at 475, 102 S.Ct. at 760,

suggests that reference to this consideration is still required. *Kirby, supra.*

The test is a generous one. *Bank Stationers Association, Inc. v. Board of Governors of Federal Reserve System,* 704 F.2d 1233, 1236 (11th Cir.1983); *Tax Analysts and Advocates v. Blumenthal,* 566 F.2d 130, 140, 142 (D.C.Cir.), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1977). The rights asserted need only be "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc.,* 397 U.S. at 153, 90 S.Ct. at 829. Indeed, one commentary has stated that "there is substantial ground to believe that [the test] may be satisfied whenever there is no special reason to deny review." 13 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3531 at 196 (1975).

As to Colonial Penn's constitutional attack, the property interest alleged is within the zone protected by the fifth amendment, and, as the entity affected, Colonial Penn has standing. *See Town Court Nursing Center, Inc. v. Beal,* 586 F.2d 266, 275 (3d Cir.1978). With respect to the statutory challenge, the prudential consideration is somewhat different. In general, the Medicare statutes are plainly applicable to beneficiaries and, in a less direct manner, to providers of services or goods reimbursable under the Act. Colonial Penn, however, is in neither category. Nevertheless, we think the insurer is within the zone of interests of the provision at issue here.

The amendment to section 1395y(b)(1) is primarily a cost reduction measure, *see* H.Rep. No. 1167, 96th Cong., 2d Sess. 352, 389 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 5526, 5717, 5752, but it affects interests of the insurer by authorizing a type of subrogation to recover the cost of Medicare payments. In accordance with that provision, the regulation provides that if Medicare payments are made to a beneficiary when the insurer provides coverage, the Secretary may bring suit against the company for reimbursement. 48 Fed.Reg. 14810 (1983) (to be codified at 42 C.F.R. § 405.323(c)(3)(iii)). The theory for such a suit is that the insurer is responsible for primary coverage and cannot limit itself to secondary liability because Medicare is available. *See* 48 Fed.Reg. 14804 (1983); 47 Fed.Reg. 21104 (1982).

Thus we are not presented with merely a housekeeping statute ordering the affairs of the government. *See Control Data Corp. v. Baldrige,* 655 F.2d 283 (D.C.Cir.), *cert. denied,* 454 U.S. 881, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981) (suppliers of data processing equipment not within zone of interest of regulation defining procurement specifications for government computer equipment). Colonial Penn is exposed to litigation and affected by the statute at issue. We conclude that the company is "arguably" regulated and that the zone of interest standard has been met as to the statutory claim. *See Arnold Tours, Inc. v. Camp,* 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970) (per curiam); *Columbia Broadcasting System, Inc. v. United States,* 316 U.S. 407, 422, 62 S.Ct. 1194, 1202, 86 L.Ed. 1563 (1942) (television network has standing to contest regulations even though it is not directly regulated; "[i]t is enough that . . . the regulations . . . alter and affect adversely appellant's contractual rights"); *Cotovsky—Kaplan Physical Therapy Association, Ltd. v. United States,* 507 F.2d 1363, 1366 (7th Cir.1975) (physical therapy organization indirectly regulated by Medicare regulation is within zone of interests); *but see National Union of Hospital and Health Care Employees v. Carey,* 557 F.2d 278 (2d Cir.1977).[1]

---

1. In *Granville House, Inc. v. Department of Health and Human Services,* 715 F.2d 1292 (8th Cir.1983), the court addressed whether a nonprofit corporation that operated residential chemical dependency treatment programs had standing to challenge the Department's interpretation of "institutions for mental disease."

The court held that the "nexus between Granville's purpose and the purpose of the Medicaid statute, which is to provide medical assistance to the needy, combined with Granville's economic injury" was sufficient to satisfy the zone of interests test and confer standing. *Id.* at 1299.

## II.

■ Our review of jurisdictional matters is not complete however. Congress limited access to the courts by incorporating into the Medicare Act the jurisdictional bar of section 205(h) of the Social Security Act, 42 U.S.C. § 405(h) (1976). *See* 42 U.S.C. § 1395ii (1976) (section 405(h) "shall also apply with respect to this subchapter to the same extent as . . . applicable with respect to subchapter II . . . .").

Section 405(h) provides:

"Finality of Secretary's decision

The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter."

The third and last sentence, prohibiting actions against the Secretary under section 1331, would, at first reading, appear to bar the exercise of federal question jurisdiction over the constitutional and statutory claims raised by Colonial Penn in this case. Examination of the case law however reveals a somewhat less stringent interpretation.

In *Weinberger v. Salfi*, 422 U.S. 749, 757, 95 S.Ct. 2457, 2462, 45 L.Ed.2d 522 (1975), the Court held that the third sentence of section 405(h) precluded resort to federal question jurisdiction for adjudicating constitutional challenges as well as claims under the Social Security Act for benefits to survivors of wage earners. In reaching this decision, the court observed that constitutional and other contentions could be presented through the judicial review provision of section 205(g), 42 U.S.C. § 405(g). "Thus the plain words of the third sentence of § 405(h) do not preclude constitutional challenges. They simply require that they

be brought under jurisdictional grants contained in the Act, and thus in conformity with the same standards which are applicable to nonconstitutional claims arising under the Act." 422 U.S. at 762, 95 S.Ct. at 2465.

The *Salfi* Court further observed that had no judicial review of constitutional challenges been available, such a restriction would be "extraordinary" and would raise "a serious constitutional question of the validity of the statute." *Id.* The Court emphasized this point again in *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), noting that a decision denying jurisdiction under section 405(g) "would effectively have closed the federal forum to the adjudication of colorable constitutional claims. Thus, [*Salfi*] merely adhered to the well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed and we will not read a statutory scheme to take the 'extraordinary' step of foreclosing jurisdiction unless Congress' intent to do so is manifested by ' "clear and convincing" ' evidence." 430 U.S. at 109, 97 S.Ct. at 986.

A critical distinction between *Salfi, Sanders,* and the case at hand is the absence of a provision in the Medicare law similar to section 405(g) that would allow Colonial Penn to press its claim. Thus, the review route open in other Social Security or Medicare benefit cases is not available to plaintiff here.

In view of the preclusive language of section 405(h), a number of courts have found that distinction unavailing to justify the exercise of section 1331 jurisdiction over constitutional claims. *See e.g., Drennan v. Haris*, 606 F.2d 846, 850 (9th Cir.1979); *Dr. John T. MacDonald Foundation, Inc. v. Califano*, 571 F.2d 328, 332 (5th Cir.) (en banc), cert. denied, 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); *Trinity Memorial Hospital of Cudahy, Inc. v. Associated Hospital Service, Inc.*, 570 F.2d 660, 667 (7th Cir.

Footnote 1—Continued

The case at bar is somewhat similar in that 70% of Colonial Penn's automobile policies are

issued to senior citizens 65 years of age or older and approximately 90% to those 55 years of age or older.

1977); *see also V.N.A. of Greater Tift County, Inc. v. Heckler,* 711 F.2d 1020, 1026 (11th Cir.1983). These cases, however, rely on the Court of Claims' assertions of jurisdiction to review such claims, *Whitecliff, Inc. v. United States,* 536 F.2d 347, 351, 210 Ct.Cl. 53 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 561 (1977).

By acquiescing in the Court of Claims exercise of jurisdiction, the decisions by the various courts of appeals avoided the serious constitutional question of whether all judicial review of constitutional claims may be foreclosed. *See e.g., V.N.A. of Greater Tift County, Inc.,* 711 F.2d at 1026 n. 17. *See also National Association of Home Health Agencies v. Schweiker,* 690 F.2d 932, 939 (D.C.Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1193, 75 L.Ed.2d 438 (1983) ("Every court that has considered the issue has agreed that section 405(h) should be read so as to permit *some* avenue of judicial review for *constitutional* claims").

A different result was reached by the Court of Appeals for the Sixth Circuit in *Chelsea Community Hospital v. Michigan Blue Cross Association,* 630 F.2d 1131 (6th Cir.1980). There the court declined to transfer the case to the Court of Claims, finding the rationale of the above cases neither "attractive" nor "persuasive." *Id.* at 1135. In holding that there was jurisdiction under section 1331 to adjudicate a constitutional claim arising under the Medicare Act, the *Chelsea* court found no clear and convincing evidence of intent to preclude review. *Salfi* was distinguished on the ground that section 405(h) does not have "application . . . where no statutory review mechanism is available." *Id.*

Similar reasoning was applied by the Court of Appeals for the Eighth Circuit in *St. Louis University v. Blue Cross Hospital Service,* 537 F.2d 283 (8th Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976), and by the Court of Appeals for the District of Columbia in *National Association of Home Health Agencies v. Schweiker,* 690 F.2d 932 (D.C.Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1193, 75 L.Ed.2d 438 (1983). *See also Starnes v. Schweiker,* 715 F.2d 134, 139–141 (4th Cir.1983); *United States v. Aquavella,* 615 F.2d 12, 18–21 (2d Cir.1979); *Northeast Emergency Medical Associates v. Califano,* 470 F.Supp. 1111, 1119–20 (E.D.Pa.1979), *aff'd mem.,* 614 F.2d 771 (3d Cir.1980).

After considering the conclusions reached by the various courts, we hold that, under the facts of this case, there is jurisdiction under 28 U.S.C. § 1331 to review the constitutional challenge brought by Colonial Penn.[2] To hold that courts are precluded from deciding such issues would raise a serious constitutional problem in itself. *See Salfi,* 422 U.S. at 762, 95 S.Ct. at 2465. The unavailability of administrative remedies here makes it unnecessary for us to determine whether there must be exhaustion before bringing constitutional challenges to court. *See* 42 U.S.C. § 1395*oo* (f)(1) (Supp. V 1981) (Medicare *providers* may obtain immediate judicial review in instances where the Provider Reimbursement Review Board determined it is without authority to decide question of law).

Although a substantial number of appellate court decisions find some avenue of relief for constitutional claims, no such consensus exists when the dispute turns on the application or interpretation of a statute or

---

**2.** We have previously exercised mandamus jurisdiction, 28 U.S.C. § 1361, to decide constitutional issues in Social Security disability cases, notwithstanding section 405(h). *Mattern v. Weinberger,* 519 F.2d 150 (3d Cir.1975), *vacated and remanded sub nom. Mathews v. Mattern,* 425 U.S. 987, 96 S.Ct. 2196, 48 L.Ed.2d 812 (1976) (remanded for consideration in light of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18). However, *Mattern* was decided before *Salfi* and when we reviewed the case again, after our remand to the district court, we found that jurisdiction existed under section 405(g). *Mattern v. Mathews,* 582 F.2d 248, 253 (3d Cir.1978), *cert. denied,* 443 U.S. 912, 99 S.Ct. 3101, 61 L.Ed.2d 876 (1979). We have since held, in *Kuehner v. Schweiker,* 717 F.2d 813, 819 (3d Cir.1983), that mandamus was a proper jurisdictional basis for class action contentions that Social Security Administration procedures in terminating disability payments violated constitutional and statutory provisions. Because we find jurisdiction under the more expansive scope of § 1331, we need not tarry on the mandamus jurisdictional issue here.

regulation. *See V.N.A. of Greater Tift County,* 711 F.2d at 1025–26; *National Association of Home Health Agencies,* 690 F.2d at 939–40. The nature of the matter in controversy assumes significance in influencing the courts' jurisdictional decisions. Thus, where the claim is one for benefits under the Medicare Act, the tendency to apply the ban of section 405(h) is strong. *Hopewell Nursing Home, Inc. v. Schweiker,* 666 F.2d 34 (4th Cir.1981); *Chelsea Community Hospital v. Michigan Blue Cross Association,* 630 F.2d 1131 (6th Cir.1980) (jurisdiction exists when no administrative remedy provided); *Hospital San Jorge, Inc. v. United States Secretary of Health, Education and Welfare,* 598 F.2d 684 (1st Cir. 1979). Such suits are viewed as going to the heart of section 405(h) because they envision recovery on a " 'claim emanating from' the Medicare Act." *V.N.A. of Greater Tift County,* 711 F.2d at 1025, *quoting Association of American Medical Colleges v. Califano,* 569 F.2d 101, 107 (D.C.Cir.1977). *See also National Association of Home Health Agencies,* 690 F.2d at 938.

In *United States v. Erika,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), the Supreme Court concluded that there was no judicial review of a carrier's determination on the amount of an award under part B of the Medicare program. The Court viewed the "precisely drawn provisions" of 42 U.S.C. § 1395ff, which limit judicial scrutiny, as "persuasive evidence that Congress deliberately intended to foreclose further review" of the claim at issue. *Id.* at 208, 102 S.Ct. at 1654. The court also relied on legislative history stating that the purpose of the statute was to avoid overloading the courts with minor matters. *Id.* at 208–11, 102 S.Ct. at 1654–55. Finding the language of section 1395ff dispositive, the Court found it unnecessary to reach the bar of section 405(h). *Id.* at 206 n. 6, 102 S.Ct. at 1653 n. 6.

Some cases, however, have found that section 405(h) does not eliminate section 1331 jurisdiction when the matter is unrelated to reimbursement. In *Starnes v. Schweiker,* 715 F.2d 134, 139–41, (4th Cir. 1983), the court found that section 405(h) did not bar a suit alleging that certain regulations violated the notice and comment provisions of the Administrative Procedures Act, statutory provisions of the Medicare Act, as well as equal protection and due process rights. The court characterized the plaintiff's suit as one to "enforce lawful conduct on the part of the Secretary," rather than "one to recover benefits." *Id.* at 141.

The *Starnes* court relied heavily on the decision in *National Association of Home Health Agencies.* In that case, the Court of Appeals for the District of Columbia distinguished between suits "directly related to a claim for reimbursement" and those challenging "the mode of reimbursement," and concluded that the latter were not within the ban of section 405(h). 690 F.2d at 938. *But see American Association of Councils of Medical Staffs of Private Hospitals, Inc. v. Califano,* 575 F.2d 1367, 1372 (5th Cir.1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1018, 59 L.Ed.2d 72 (1979).

In reaching its result the District of Columbia court reasoned that the Secretary failed to overcome the strong presumption against precluding access to the courts, finding no legislative history that demonstrated an intent to preclude jurisdiction over claims for which no alternative form of judicial relief was available. 690 F.2d at 940. The court also observed that precluding review did not further a policy underlying section 405(h) of allowing an agency to decide matters within its competence. *Id.* at 940–41. The court was careful to note, however, that a court "may [not] disregard section 405(h) anytime the concerns expressed above are not present." *Id.* at 941 n. 56.

This excursion through the case law addressing the nuances of section 405(h) points up the difference between the case at hand and those finding that this section precludes the exercise of jurisdiction under section 1331. Here, there is no claim for benefits under Medicare. Moreover, Colonial Penn is not an entity, such as a beneficiary or a provider of services, that is di-

rectly addressed by Medicare law.[3] As the Secretary concedes, the administrative procedures set forth in the statute do not allow Colonial Penn to seek administrative review. Further, unlike the situation in *Erika,* there is no prospect here of a flood of small claims inundating the courts with matters capable of being fairly resolved in administrative proceedings. Therefore, no reason exists to suspect that Congress intended to limit judicial review of the question at issue.

Although not compelling, it is also significant to note that the first sentence of section 405(h) binds parties to the "findings and decisions of the Secretary [made] after a hearing" and that the second sentence provides that "[n]o findings of fact or decision of the Secretary shall be reviewed . . . except as herein provided." The last sentence of that section prohibits suits against the Secretary to "recover on any claim." Fairly interpreted in context, "decision" means a determination made after reviewing contentions by a claimant and is properly read in conjunction with a provision, such as section 405(g), that contemplates an administrative hearing. As the Supreme Court remarked in *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976), "Absent such a claim [for benefits] there can be no 'decision' of any type. And some decision is clearly required by the statute." *See United States v. Aquavella,* 615 F.2d at 19; *cf. Memorial Hospital v. Heckler,* 706 F.2d 1130, 1133 (11th Cir.1983) (issue does not involve finding that no payment may be made but concerns validity of the regulation itself); *Trinity Memorial Hospital,* 570 F.2d at 667 ("Secretary neither made findings of fact nor rendered a decision upon the constitutional issue").

In the case at hand, there is neither a "finding of fact", nor a "decision," nor a "claim" arising under this title. Thus, by its own terms, section 405(h) does not apply to bar section 1331 jurisdiction in this case.

*But cf. American Association of Councils of Medical Staffs of Private Hospitals v. Califano,* 575 F.2d 1367, 1372 (5th Cir.1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1018, 59 L.Ed.2d 72 (1979).

We conclude, therefore, that the district court did have jurisdiction to entertain the statutory claim under section 1331. We need not decide whether in these circumstances mandamus would also apply, although our decisions in *Kuehner v. Schweiker* and *Mattern v. Weinberger* point that way. *See also Starnes v. Schweiker,* 715 F.2d at 141–42.

### III.

■ The final factor for preliminary consideration is whether the case is ripe for adjudication. *See generally,* 13 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3532 (1975). At the time the suit was filed, Colonial Penn had not yet been required to make any payments as a result of the implementation of the regulations. The district judge's bench opinion suggests that in contesting a specific claim Colonial Penn could assert the contentions it presses here. That would be true if the Secretary filed an action against Colonial Penn; the company would then have the opportunity to raise its objections as a defense to the suit. The practical difficulty is that realistically the Secretary is not likely to file such a suit for some time.

If the district judge was referring to a claim made by a policyholder, Colonial Penn would be forced to deny the claim and wait for a suit to be brought. More than likely a suit by the policyholder would be brought in state court. Additional delays would then be incurred by the likely prospect of joinder of the Secretary as a party and the subsequent removal of the case to the federal court.

It is apparent to a statistical and almost metaphysical certainty that claims will be

---

**3.** *Northeast Emergency Medical Associates v. Califano,* 470 F.Supp. 1111 (E.D.Pa.1979), *aff'd mem.,* 614 F.2d 771 (3d Cir.1980), presented a statutory challenge by an alleged provider of services and is thus distinguishable from the case at hand.

pressed against Colonial Penn. The interests of the parties here are adverse and the controversy is both substantial and real. We conclude that the matter is ripe for adjudication.

## IV.

At long last, then, we come to the merits.

■ Colonial Penn's principal focus on appeal is the effective date of the regulation. The company observes, probably correctly, that if the regulation was made effective only as to policies issued after June 6, 1983, losses could be averted or minimized. Had the regulation been phrased in that manner, the company might have been able to correlate its policy and premium structure to the Medicare changes. By the same token, that extension of time would have caused additional costs to the Medicare program.

Colonial Penn argues that the regulations are invalid as applied to pre-existing contracts. The company makes two arguments: first, the regulations are retroactive and thus inconsistent with the statute;[4] and second, application of the regulation to pre-existing contracts violates the fifth amendment.

The statute, enacted on December 5, 1980, states that payments will not be made under Medicare when "payment has been made or can reasonably be expected to be made" under an automobile or liability insurance policy. In the comments to the regulations, the Secretary observed that the effective date of the Act, "admitted of two interpretations: application to services furnished after that date, regardless of when the accident occurred; or application to

services related to accidents occurring on or after that date." 48 Fed.Reg. 14804 (1983).

The Secretary adopted the route more favorable to insurers and applied the regulations to services required because of accidents that occur after December 5, 1980. 48 Fed.Reg. 14809 (to be codified at 42 C.F.R. § 405.322(a)). Moreover, where payments "can reasonably be expected" to be made by an insurer, the regulations apply to services furnished after June 6, 1983. 48 Fed.Reg. 14810 (to be codified at 42 C.F.R. § 405.323(a)). In our view, the regulations conform to the plain language of the statute. Thus, we reject the contention that they are contrary to the intent of Congress or the language of section 1395y(b)(1). *See also Daughters of Miriam Center for the Aged v. Mathews,* 590 F.2d 1250, 1256 (3d Cir.1978) (authorization to apply regulations retroactively may be inferred from 42 U.S.C. § 1395hh).

As support for its position that the regulations should not operate retroactively, Colonial Penn relies primarily on *City of Los Angeles Department of Water and Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). In that case, the Supreme Court cautioned against retroactive application of legal rules governing pension programs because such plans are based on actuarial premises. The Court noted that requiring refunds to participants in a pension fund as part of a Title VII award would create a major unforeseen contingency that "jeopardizes the insurer's solvency and, ultimately, the insured's benefits." *Id.* at 721, 98 S.Ct. at 1382. *See also Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans v. Norris,* —— U.S. ——, ——, 103 S.Ct. 3492, 3508, 77 L.Ed.2d 1236 (1983) (Powell, J., concurring).

---

**4.** In its complaint, Colonial Penn suggested the regulations were inconsistent with the legislation because Congress sought to eliminate double recoveries rather than eliminate Medicare coverage when insurance coverage was secondary. The company has not pressed this point in its appellate challenge to the statute. In any event, we think Colonial Penn reads the statute too narrowly. The legislative history states

that the purpose of the amendment was to make "medicare payment liability secondary" and to prevent Medicare from relieving "insurers of obligations to pay the costs of medical care in cases where there would otherwise be liability under the ... insurance contract." H.Rep. No. 1167, 96th Cong., 2d Sess. 352, 389 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News at 5717, 5752.

However, the obligations to the beneficiaries in *Manhart* were long term and the refunds could theoretically extend back many years. *See* 435 U.S. at 722 n. 42, 98 S.Ct. at 1382 n. 42. In contrast, the time period here is limited. Moreover, unlike the situation in *Manhart,* and as our discussion below on the constitutional issue points out, the company knew of congressional action well in advance of the implementation date of the regulations. From that standpoint, *Manhart* does not compel the conclusion that this statute and these regulations do not apply to pre-existing insurance contracts.

■ Colonial Penn's constitutional argument is more substantial. It contends that because the regulations affect a pre-existing contract, they violate the fifth amendment. As the insurance company sees it, the regulations changed the rules in the middle of the game, thereby upsetting its reliance on existing law and impairing the company's contract obligations with its policyholders.

The change in the Medicare payments, vis-a-vis the no-fault and medical payments policies, however, was brought about by the amendments to the statute itself. The insurance company has not demonstrated any basis for challenging Congress's right to change the Medicare Act. Colonial Penn has no vested rights in maintenance of the statutory status quo. *See Memorial Hospital v. Heckler,* 706 F.2d 1130, 1136–37 (11th Cir.1983); *Cervoni v. Secretary of Health, Education and Welfare,* 581 F.2d 1010, 1017–19 (1st Cir.1978).

Indeed, even direct beneficiaries of the Act could not assert vested property rights as a bar to modification of the statute by Congress. *See United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980) *citing Flemming v. Nestor,* 363 U.S. 603, 608–611, 80 S.Ct. 1367, 1371–73, 4 L.Ed.2d 1435 (1960); *see also Washington v. Secretary of Health and Human Services,*

718 F.2d 608, 610 (3d Cir.1983). Colonial Penn's decision to contract with its policyholders by tying its coverage to the Medicare provisions does not thereby confer power on the insurance company to prevent any change in the statute.

The company chose to have its coverage contingent on a statute that was subject to change at the whim of Congress, and to write policies in an area subject to heavy regulation. Thus, in addition to the normal incident of risk of injury to its policyholders, the company freely chose to chance a change in the Medicare law.

To the extent the text of Colonial Penn's policy was dictated by state law, no change in result can occur. State legislatures and state insurance commissions lack the power to insist that Congress not alter the scope of the Medicare program. The insurer and the states knew as of December 5, 1980 that Congress had changed the pre-existing priority of payments. If state law prevented Colonial Penn from tailoring the language of its policies to allow for the congressional modification, the company's options were limited. It could choose to run the risk of change during a policy term or not write at all. The company's decision to gamble on the status quo does not confer immutability on the prior version of the statute. In our view, the problem confronting Colonial Penn is more directly traceable to the company's choice of policy language, perhaps mandated by state law, than it is a result of Congress' decision to alter the Medicare benefits scheme.

The Secretary's regulations, issued in May 1982 for comment and promulgated in April 1983, were further notice that adverse consequences were soon to follow. *Cf. Shelter Framing Corp. v. Pension Benefit Guaranty Corp.,* 705 F.2d 1502, 1511 (9th Cir.), *appeal filed,* 52 U.S.L.W. 3142 (Aug. 30, 1983) (No. 83–291). We recognize the difficulties of negotiating with state insurance departments in circumstances like these, but that factor does not mandate that the Secretary frame the regulations so

as to ease the burden on Colonial Penn and other insurers.

The provision in the statute requiring the Secretary to promulgate regulations gave Colonial Penn some breathing room—here, two and a half years—within which it could take some steps to ease the impact of the statutory change.[5] In view of the interval between enactment of the statute and issuance of the regulations, Colonial Penn cannot contend that the regulations upset any justified expectations. *Cf. Cheshire Hospital v. New Hamsphire-Vermont Hospitalization Service, Inc.,* 689 F.2d 1112, 1120, 1122 (1st Cir.1982).[6] At least that is so in the time periods that were present here.

We conclude that plaintiff would be unable to demonstrate a constitutional violation or inconsistency between the statute and the regulation. Accordingly, although the district court erred in its jurisdictional ruling on section 1331, its dismissal of the suit was nonetheless correct. The judgment of the district court will be affirmed.

---

**5.** An additional grace period was explicitly granted by the Secretary. The final regulations were issued on April 5, 1983, but were applicable only as to services furnished on or after June 6, 1983. This sixty-day period allowed Colonial Penn further time to adjust its policies and rate structure.

**6.** Colonial Penn argued in the district court that the regulations violate the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–12 (1982). That point was not pressed on appeal, but, in any event, we do not think the contention has merit in these circumstances. If the Medicare amendment is interpreted as regulating insurance, then the statute simply represents permissible congressional pre-emption of state law. There is ample evidence of such an intent in the legislative history. Thus, the requirement of McCarran-Ferguson that the federal law "specifically relate to the business of insurance," 15 U.S.C. § 1012, is satisfied in this instance. If, on the other hand, the amendments do not regulate insurance, but only the priority of Medicare payments, McCarran-Ferguson does not apply. *See generally Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans v. Norris,* —— U.S. ——, —— n. 17, 103 S.Ct. 3492, 3500 n. 17, 77 L.Ed.2d 1236 (Marshall, J. concurring), at —— n. 6, 103 S.Ct. at 3507 n. 6 (Powell, J. concurring) (1983); *Union Labor Life Insurance Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982).