695 F.2d 1006
 MEADE TOWNSHIP, Empire Township, Sweetwater Township, Glen
Arbor Township, Lake Township, Trout Township,
Michigan Townships Association,
Plaintiffs- Appellants,
v.
Cecil D. ANDRUS, Counties of: Alcona, Alger, Baraga,
Benzie, Chippewa, Crawford, Delta, Gogebic, Houghton, Iosco,
Iron, Keweenaw, Lake Leelanau, Mackinac, Manistee,
Marquette, Mason, Mecosta, Monroe, Montcalm, Muskegon,
Newaygo, Oceana, Ogemaw, Ontonagon, Oscoda, St. Clair,
Schoolcraft, Wexford and Michigan Association of Counties,
Defendants-Appellees.
 No. 80-1405.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 18, 1981.
Decided Dec. 20, 1982.
As Amended on Denial of Rehearing March 4, 1983.
 
 John H. Bauckham and Kenneth C. Sparks (argued), Bauckham, Reed, Long, Schaefer & Travis, Kalamazoo, Mich., for plaintiffs-appellants.
 Paul E. Braunlich, Monroe, Mich., for Monroe.
 Anthony A. Monton, William F. Hanna, Hart, Mich., for Oceana.
 Keith J. Schuiteman, Pros. Atty., White Cloud, Mich., for Newaygo.
 Martin Holmes, Ludington, Mich., for Mason.
 Eugene G. Wanger (argued), Lansing, Mich., for remaining counties.
 James S. Brady, U.S. Atty., Grand Rapids, Mich., Lyle K. Rising (argued), Dept. of Interior, Denver, Colo., for federal defendants.
 James W. Moorman, Asst. Atty. Gen., Robert L. Klarquist, Nancy B. Firestone, Attys., Dept. of Justice, Washington, D.C., for Secretary of the Interior.
 Before LIVELY and MARTIN, Circuit Judges, and BROWN,* Senior Circuit Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 This appeal requires us to decide whether certain regulations promulgated by the Secretary of the Interior conflict with the governing statute, the Payments in Lieu of Taxes Act, 31 U.S.C. Secs. 1601-1607. Pursuant to the challenged regulation, the Secretary determined that counties were the only units of local government in the State of Michigan eligible to receive federal funds under the Act. In this action for declaratory and injunctive relief, six Michigan Townships and the Michigan Townships Association seek to compel the Secretary to disburse funds to certain Michigan townships.
 
 
 2
 The Payments in Lieu of Taxes Act provides for payments to local governments which have tax-exempt federal lands ("entitlement lands") within their boundaries. This funding is designed to relieve the fiscal burden which entitlement lands impose on local governments by reducing the property tax base. The Act directs the Secretary of the Interior to make annual payments to "each unit of local government in which entitlement lands ... are located." 31 U.S.C. Sec. 1601. Recipient local governments may use these funds "for any governmental purpose." Id.
 
 
 3
 The present controversy focuses on the Secretary's interpretation of section 1606(c), which provides in its entirety:
 
 
 4
 "unit of local government" means a county, parish, township, municipality, borough existing in the State of Alaska on the date of enactment of this Act, or other unit of government below the State which is a unit of general government as determined by the Secretary (on the basis of the same principles as are used by the Bureau of the Census for general statistical purposes). Such term also includes the Commonwealth of Puerto Rico, Guam, and the Virgin Islands.
 
 
 5
 (emphasis added). Section 1606(c) empowers the Secretary to define "unit of general government." This definitional authority is critical, for only "units of general government" are considered "units of local government" eligible to receive funds under the Act.
 
 
 6
 Pursuant to his authority under section 1606(c), the Secretary initiated formal rulemaking proceedings and proposed a regulation which included the following language:
 
 
 7
 "Unit of general government" means a unit of that type of government which, within its state, is the principal provider of governmental services affecting the use of entitlement lands. Those services of government include (but are not limited to) maintenance of land records, police protection, fire protection, taxation, land use planning, search and rescue and road construction. Ordinarily, a unit of general government will be a county. However, where a smaller unit of government is the principal provider of governmental services affecting the use of public lands within a state, the smaller unit, even though within a larger unit of government, will be considered a general unit of government and will receive payments under the Act. These units of general government will ordinarily be "towns" or townships within states where county governments are nonexistent or nearly nonexistent.
 
 
 8
 (emphasis added). This regulation was ultimately adopted over the objections of appellant Townships. It is codified at 43 C.F.R. Sec. 1881.0-5.[1]
 
 
 9
 The regulation defines "units of general government" by reference to a "principal provider of services" test. The Secretary applied this test to political subdivisions in the State of Michigan and concluded that: "An analysis of the statistical data available indicates that the county is the principal taxing body and provider of general government services on the local level in the state of Michigan." Thus, at present, the Secretary does not recognize Michigan townships as "units of general government"; the townships are therefore ineligible for funds under the Payments in Lieu of Taxes Act.
 
 
 10
 The appellant Townships concede that the Secretary enjoys considerable discretion in his definitional authority under section 1606(c). They contend, however, that he exceeded this authority when he imposed the "principal provider of services" standard on potential payment recipients. According to the Townships, Congress circumscribed the Secretary's power to define "units of general government" by enacting section 1602(d), which provides:
 
 
 11
 In the case of a smaller unit of local government all or part of which is located within another unit of local government, entitlement lands which are within the jurisdiction of both such units shall be treated for purposes of this section as only within the jurisdiction of such smaller unit.
 
 
 12
 The appellants ask us to strike the Secretary's regulation because it is inconsistent with the plain language and purpose of section 1602(d). In the alternative, they seek a judicial determination that Michigan townships rather than counties are the "principal providers of governmental services affecting the use of entitlement lands."[2]
 
 
 13
 In the proceedings below, the district court approved the substance of the Secretary's regulation. After an initial remand to clarify the Secretary's use of statistical data, the court also found that the disbursement of funds to Michigan counties rather than townships was proper.
 
 
 14
 Upon careful consideration of the arguments and the record on appeal, we conclude that the district court erred in upholding the "principal provider of services" provision of the Secretary's regulation. This result, of course, obviates any need to pursue the appellants' alternative contention that Michigan townships are "principal providers of services."
 
 
 15
 Throughout our deliberations in this case, we have borne in mind the standard of review applicable to an administrative regulation. The interpretation of a statute by the agency charged with its enforcement is entitled to "more than mere deference or weight. (The regulation) can only be set aside if the Secretary exceeded his statutory authority or if (it) is arbitrary, capricious or otherwise not in accordance with law." Batterton v. Francis, 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977); 5 U.S.C. Sec. 706(2)(A). Nevertheless, federal courts bear the ultimate responsibility for interpreting federal statutes. If an administrator promulgates a regulation which is inconsistent with the plain language of the governing statute, we are constrained to declare that regulation invalid. United States v. Larionoff, 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977). The present controversy is such a case.
 
 
 16
 Our analysis begins with the language of the statute itself. Greyhound Corp. v. Mt. Hood Stages, Inc., 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1972). Section 1602(d) is straightforward: whenever two "units of local government" exercise concurrent jurisdiction over entitlement lands, the smaller unit receives payments for the lands within its boundaries. Implicit in this provision are two unambiguous legislative choices.
 
 
 17
 First, the enactment of section 1602(d) demonstrates a congressional expectation that the Secretary's definition of "units of general government" would produce, in at least some states, a heterogenous group of "units of local government." This inference is unavoidable, for the possibility of concurrent jurisdiction over entitlement lands exists only if the Secretary recognizes more than one form of local government within a single state.
 
 
 18
 Second, in contemplation of an administrative scheme whereby two or more "units of local government" might be eligible for the same funds, Congress anticipated the problem of choosing a single recipient. It is of the utmost significance that Congress did not entrust this decision to the Secretary's discretion. Instead, it incorporated in the statute a single, dispositive selection criterion--the relative sizes of the "units of local government." Nowhere does the Act authorize the Secretary to employ his power to define "units of general government" in a manner which avoids or undermines this legislative preference for the "smaller unit."
 
 
 19
 A comparison of the "principal provider of services" portion of the Secretary's regulation with the plain language of section 1602(d) reveals serious inconsistencies. First, as we have already observed, section 1602(d) is premised on a legislative assumption that more than one "unit of local government" may have jurisdiction over the same entitlement lands; the regulation, by contrast, eliminates the possibility of concurrent jurisdiction by recognizing only one "unit of local government" in a given area. Thus, in effect, the Secretary has utilized his definitional authority under section 1606(c) to render section 1602(d) inoperative. We could not uphold the regulation in its present form without violating the fundamental principle that all provisions of a statute must be given full effect. American Textile Mfrs. Institute v. Donovan, 452 U.S. 490, 513, 101 S.Ct. 2478, 2492, 69 L.Ed.2d 185 (1981); Weinberger v. Hynson, Westcott & Dunning, 412 U.S. 609, 633, 93 S.Ct. 2469, 2485, 37 L.Ed.2d 207 (1973). We decline to pursue such a course.
 
 
 20
 Second, we are troubled by the Secretary's refusal to heed Congress' expressed preference for smaller "units of local government." The Secretary's discretion to define "units of general government" is undoubtedly broad; this discretion does not, however, extend to the creation of a rule which subverts the legislative policy favoring smaller "units." We cannot, in the context of the present litigation, compel the Secretary to disburse funds to townships in Michigan or other states.[3] However, we can--and must--require him to conform his administrative regulations to the plain language of section 1602(d).
 
 
 21
 In support of the present regulation, the Secretary calls our attention to his pattern of disbursements to local governments in several New England states, where both counties and townships receive funds. According to the Secretary, this illustration demonstrates his compliance with section 1602(d). This argument is without merit. New England townships receive funds because they have been designated "primary providers of services," not because of the "smaller unit" directive of section 1602(d). New England counties are eligible for funds only if no organized township is located within their boundaries; under these circumstances, counties become "primary providers of services" by default. Thus, the Secretary's policy in New England exemplifies nothing more than adherence to an invalid regulatory standard.
 
 
 22
 Having determined that the "primary provider of services" standard of the Secretary's regulation conflicts with the plain language of section 1602(d), we need not, strictly speaking, look beyond the Act for evidence of Congressional intent. See Tennessee Valley Authority v. Hill, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296-97 n. 29, 57 L.Ed.2d 117 (1978), and cases cited therein. However, inasmuch as the district court's conclusions rest largely on its interpretation of the Act's legislative history, we include a brief discussion of that history in this opinion.
 
 
 23
 The district court relied heavily on a colloquy which took place in the House of Representatives between Representative Weaver, the floor manager of the bill, and Representative Roush of Indiana:
 
 
 24
 Mr. ROUSH. Mr. Chairman, I would like to be recognized for just a moment. I have a question which pertains to subsection (2)(d) of the bill, and more particularly, I refer to page 13 of the report, the next to the last paragraph. The paragraph reads:
 
 
 25
 Subsection (2)(d) addresses those situations where entitlement land is located within concurrent units of local governments. For example, in some cases National Park or other Federal land is located in both a county and township. The smaller unit, the township, is the unit of local government immediately burdened by the tax immunity of these lands. This provision insures that payments under the Act will go to the smaller unit of government when the entitlement lands are located within more than one unit concurrently.
 
 
 26
 Mr. Chairman, in Indiana the fact is that it would be the county, although it is not the smallest unit of government, which would bear the burden of the tax loss. It would be the county which would provide the police protection or any additional security that may be needed because of the existence of a recreation area within, say, the reservoir land.
 
 
 27
 Mr. Chairman, it occurs to me that in that instance the payment should go to the county and not to the township. I am wondering whether this language is so restrictive as to prohibit the payment to the county rather than to the township.
 
 
 28
 * * *
 
 
 29
 * * *
 
 
 30
 MR. WEAVER. Mr. Chairman, in section 6(c) it states:
 
 
 31
 " 'Unit of local government' means the county, parish," et cetera, as determined by the Secretary. The Secretary will then determine which government shall receive the payment by using the criterion as to which has the tax disadvantage and which is the main taxing body of that area.
 
 
 32
 MR. ROUSH. Mr. Chairman, I thank the gentleman for his answer. I think that the Secretary would be very conscious of the problem which would exist in Indiana, wherein the county bears the burden of providing most services rather than the smallest unit of government, the township.
 
 
 33
 122 Cong.Rec. H8407 (daily ed. August 5, 1976). Representative Weaver's remarks, viewed in isolation from the rest of the Act's legislative history would indeed seem to bear out the interpretation advanced by the Secretary and adopted by the district court. However, the significance of this exchange pales in the context of section 1602(d)'s legislative history as a whole.
 
 
 34
 The House and Senate Committee Reports, for example, unambiguously support our construction of section 1602(d). According to the House Report:
 
 
 35
 "Subsection (2)(d) addresses those situations where entitlement land is located within concurrent units of local government. For example, in some cases National Parks or other Federal Land is located in both a county and a township. The smaller unit, the township, is the unit of local government immediately burdened by the tax immunity of these lands. This provision insures that payments under the Act will go to the smaller unit of government when the entitlement lands are located within more than one unit concurrently."
 
 
 36
 (emphasis added). H.R.Rep. No. 1106, 94th Cong., 2d Sess. 13 (1976). The Senate Committee Report contains a nearly identical passage. S.Rep. No. 1262, 94th Cong., 2d Sess. 13 (1976), U.S.Code Cong. & Admin.News 1976, p. 5968. Nowhere does the report of either Chamber intimate that the Secretary has discretion to substitute a criterion of his own formulation for the statutory standard of the "smaller unit."[4]
 
 
 37
 This conflict in the legislative history of section 1602(d) is best resolved by reference to the Supreme Court's rule in Zuber v. Allen, 396 U.S. 168, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969). In that case, the Court found the official committee reports more persuasive of legislative intent than a floor statement by the manager of the Agricultural Adjustment Act bill:
 
 
 38
 A committee report represents the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation. Floor debates reflect at best the understanding of individual Congressmen. It would take extensive and thoughtful debate to detract from the plain thrust of a committee report in this instance.
 
 
 39
 396 U.S. at 186, 90 S.Ct. at 324. More recently, the Court reached a similar conclusion in Chandler v. Roudebush, 425 U.S. 840, 858 n. 36, 96 S.Ct. 1949, 1958 n. 36, 48 L.Ed.2d 416 (1976). This general rule of construction is particularly compelling where, as here, the plain language of the statute fails to corroborate the floor manager's isolated remarks.
 
 
 40
 In conclusion, we hold that the Secretary exceeded his authority under the Act when he included a "primary provider of services" standard in his definition of "units of general government." The appropriate relief in this court consists of striking the regulation and directing the Secretary to conform his administrative policy to the plain language of the Act.
 
 
 41
 The judgment of the District Court is reversed and the case remanded for proceedings consistent with this opinion.
 
 
 42
 Inasmuch as the circumstances of this case appear to satisfy the criteria set out in Chevron Oil Co. v. Huson, 404 U.S. 97, 106-107, 92 S.Ct. 349, 355-356, 30 L.Ed.2d 296 (1971), the effect of this decision will be prospective only. Retroactive application would, in our view, impose excessive hardship on those counties which have already received and disbursed funds as a result of the Secretary's misinterpretation of the Act.
 
 
 43
 The motions for rehearing are denied.
 
 
 
 *
 Circuit Judge Brown retired from regular active service under the provisions of 28 U.S.C. Sec. 371(b) on June 16, 1982, and became a Senior Circuit Judge
 
 
 [1]
 The full text of the regulation provides:
 Sec. 1881.0-5 Definitions
 (a) A "government," as that term is used by the Bureau of the Census for general statistical purposes, is an organized entity having substantial autonomy and whose officers are either popularly elected or appointed by publicly elected officials. Other indicia of governmental character include (1) a high degree of responsibility to the public for performance of duties of a governmental nature, (2) power to levy taxes, and (3) power to issue debt paying interest exempt from Federal taxation.
 (b)(1) "Unit of general government" means a unit of that type of government which, within its state, is the principal provider of governmental services affecting the use of entitlement lands. Those services of government include (but are not limited to) maintenance of land records, police protection, fire protection, taxation, land use planning, search and rescue and road construction. Ordinarily, a unit of general government will be a county. However, where a smaller unit of government is the principal provider of governmental services affecting the use of public lands within a state, the smaller unit, even though within a larger unit of government, will be considered a general unit of government and will receive payments under the Act. These units of general government will ordinarily be "towns" or townships within states where county governments are nonexistent or nearly nonexistent. The term "unit of general government" also includes:
 (i) Governments with the functions of a unit of general government in that state combined with another type of government such as city, township, parish borough or county, e.g., a city and county as in the City and County of Denver.
 (ii) Cities located outside of any of the units of general government for that state and administering functions commonly performed by those units of general government.
 (iii) Alaskan boroughs in existence on October 20, 1976.
 (iv) The Governments of the District of Columbia, Puerto Rico, Guam and the Virgin Islands.
 (2) The term "unit of general government" excludes single purpose or special purpose units of local government such as school districts or water districts.
 
 
 [2]
 In the State of Michigan, both townships and counties exercise broad governmental authority in the area of taxation and tax collection. Townships and counties also share responsibility for providing "general" government services such as police and fire protection and road construction and maintenance
 
 
 [3]
 As a practical matter, the application of section 1602(d) is probably limited to the five states where both counties and townships perform general governmental functions. Those states are: Michigan, Wisconsin, Pennsylvania, New York, and New Jersey
 
 
 [4]
 In addition to its reliance on the Roush-Weaver colloquy, the district court cited a portion of the Senate Committee Report. S.Rep. No. 1262, 94th Cong., 2d Sess. 14 (1976). Contrary to the court's apparent understanding, the language excerpted in its opinion refers not to section 1602(d), but to section 1603 of the Act. The passage thus has no bearing on the present controversy