725 F.2d 394
 Fed. Sec. L. Rep. P 99,639
M.J. WHITMAN & CO., INC. PENSION PLAN, Plaintiff-Appellant,
v.
AMERICAN FINANCIAL ENTERPRISES, INC., American Financial
Corporation, Carl H. Lindner, Robert D. Lindner, Julius S.
Anreder, James E. Evans, David M. Gerstein, Sandra W.
Heimann, S. Craig Lindner, Lester W. Rubin, and Ronald F.
Walker, Defendants-Appellees.
 No. 83-3012.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 17, 1983.
Decided Jan. 17, 1984.
 
 Gene Mesh, Cincinnati, Ohio, Sidney B. Silverman, argued, Silverman & Harnes, New York City, for plaintiff-appellant.
 Louis F. Gilligan, Cincinnati, Ohio, James E. Burke, argued, for defendants-appellees.
 Before KEITH and KENNEDY, Circuit Judges, and PRATT,* District Judge.
 CORNELIA G. KENNEDY, Circuit Judge.
 
 
 1
 M.J. Whitman & Co., Inc. Pension Plan (Whitman), a shareholder in American Financial Enterprises, Inc. (AFEI), brought this derivative suit to compel AFEI to register under the Investment Company Act of 1940 (ICA or the Act), 15 U.S.C. Sec. 80a-1 et seq. (1981). The District Court found no private right of action to compel registration under the ICA and granted summary judgment against Whitman. On appeal, we affirm the grant of summary judgment on a different ground; even assuming that a private right of action exists, AFEI is exempt from registration according to the provisions of the ICA.
 
 
 2
 AFEI is the successor in interest to the New York, New Haven and Hartford Railroad Company (the Railroad). The Railroad filed for reorganization under the federal bankruptcy laws in 1961. During reorganization proceedings, the Railroad transferred substantially all of its assets to the Penn Central Transportation Company, which itself subsequently filed for bankruptcy reorganization. Eventually, the Railroad received in return cash, redeemable securities of the reorganized Penn Central Corporation (Penn Central), and six percent of Penn Central's outstanding common stock. AFEI's assets presently consist largely of cash, government securities, and Penn Central securities.
 
 
 3
 AFEI's principal stockholder is American Financial Corporation (AFC), which owns about 70% of AFEI's outstanding stock and about two-thirds of all AFEI stock available for distribution. These interests in AFEI constitute less than ten per cent of AFC's assets. Although AFC has hundreds of shareholders, all common stock in AFC is owned by Carl H. Lindner and members of his family. When Whitman filed its complaint in this case, three of the ten directors on AFEI's board were members of the Lindner family and three other directors were associated professionally with AFC.
 
 
 4
 The membership of AFEI's board of directors, as well as the other provisions of the Plan of Reorganization, were approved by the federal bankruptcy court in 1980. Creditors of the Railroad received ownership of all AFEI securities. Because reorganization left AFEI with disproportionately large holdings of cash and securities typical of an investment company, the bankruptcy court directed the Railroad's Trustee to seek an exemption from registration. The Securities and Exchange Commission (SEC) issued to AFEI a "no-action" letter recognizing a one-year exemption from registration as a transient investment company. When this exemption period expired, AFEI was not engaged in "non-investment company business," as the no-action letter had anticipated, and had increased its investment holdings, particularly in Penn Central securities. In response to an inquiry, AFEI informed the SEC that it did not intend to register since it believed that the company was covered by a statutory exception to the registration requirement applicable to reorganized companies. The SEC did not respond to this information.
 
 
 5
 Whitman's suit alleges that this failure to register has injured AFEI's shareholders. In the complaint, the management of AFEI is charged with behavior that would arguably violate the ICA if the company were registered with the SEC.[1] The provisions of the ICA, however, apply only to registered companies. Accordingly, Whitman filed this suit to compel AFEI to register under the ICA, thus becoming subject to its requirements.
 
 
 6
 The District Court granted summary judgment against Whitman on the grounds that the ICA does not create a private right of action to compel an investment company to register with the SEC. Observing that the Act contains no general express private right of action, the District Court found no evidence in the language or history of the statute of any legislative intent to imply a private remedy for shareholders under the Act.
 
 
 7
 We do not find it necessary to determine whether a private right of action may be inferred from the ICA. Assuming arguendo hat a private right of action exists,[2] and that a shareholder such as Whitman may bring suit to compel registration, the grant of summary judgment against Whitman may be affirmed on alternative grounds. See Herm v. Stafford, 663 F.2d 669, 684 (6th Cir.1981); Winter v. Local Union No. 639, 569 F.2d 146, 151 (D.C.Cir.1977); United States v. General Motors Corp., 518 F.2d 420, 441 (D.C.Cir.1975). Here, AFEI may not be compelled to register with the SEC since it is exempt from registration under the ICA.
 
 
 8
 Section 6(a)(3) of the Act[3] exempts reorganized investment companies that satisfy five requirements. The parties agree that AFEI clearly satisfies four of these five requirements: 1) it was reorganized under the supervision of a court of competent jurisdiction after the effective date of the Act; 2) it was not an investment company at the commencement of reorganization proceedings; 3) all of its securities were owned by creditors or by persons who took on account of creditors' claims at the conclusion of reorganized proceedings, and 4) no securities of AFEI have been sold or offered for sale to the public since the reorganization concluded.
 
 
 9
 The dispute in this case centers on the fifth requirement, that more than 50% of a company's voting securities and other securities representing more than 50% of the net asset value of the company must be "owned beneficially" by 25 or fewer people. Here, one company, AFC, owns more than 50% of AFEI's stock. AFEI argues that its shares owned by AFC are beneficially owned by a single entity; Whitman on the other hand contends that ownership by AFC must be attributed to the hundreds of shareholders of AFC. Section 6(a)(3) provides that beneficial ownership is determined according to the manner set out in Sec. 3(c)(1) of the Act.[4]
 
 
 10
 Under Sec. 3(c)(1), if a company owns ten percent or more of the outstanding voting securities of the issuer, the securities are deemed owned by the company's shareholders; since AFC owns considerably more than ten percent of AFEI's outstanding securities, all AFC's shareholders would be deemed to own beneficially the company's share in AFEI were it not for a 1980 amendment to the ICA. That amendment added the provision that a company's ownership of shares in another company is not attributed to the parent company's shareholders if the value of all securities owned by the parent company of all companies which are or would be excluded "solely by this paragraph" does not exceed ten percent of the parent company's assets.
 
 
 11
 The meaning of "solely by this paragraph" is disputed in this case, and no court has previously interpreted the phrase. AFEI argues that the reference to companies excluded "solely by this paragraph" contained in Sec. 3(c)(1)(A) when incorporated by reference into Sec. 6(a)(3)'s exemption for reorganized investment companies should be construed to refer to companies exempt under Sec. 6(a)(3). According to this reasoning, AFC should total all its interests in Sec. 6(a)(3) companies, and if the sum is less than ten percent of AFC's assets, beneficial ownership in its AFEI securities should not be attributed to AFC's shareholders. On the other hand Whitman contends that "solely by this paragraph" indicates that the exclusion from attribution of ownership to shareholders attaches only to companies that satisfy all the requirements of Sec. 3(c)(1). Section 3(c)(1)(A) explains how beneficial ownership is determined; it is preceded in Sec. 3(c)(1) by a provision excluding from the definition of an investment company any issuer whose outstanding securities are beneficially owned by a hundred or fewer persons and which is not publicly selling its securities. AFEI has more than a hundred shareholders, and so could not be excluded solely by Sec. 3(c)(1); Whitman would conclude that beneficial ownership of AFEI securities, therefore, should be attributed to AFC's shareholders, thus disqualifying AFEI from exemption under Sec. 6(a)(3).
 
 
 12
 Under Whitman's reasoning, a company must satisfy Sec. 3(c)(1) before the beneficial ownership provisions are applied to determine whether the company is exempt under Sec. 6(a)(3). However, a company that satisfies Sec. 3(c)(1) is excluded from the definition of an investment company altogether; a Sec. 6(a)(3) exemption would be unnecessary. This result of Whitman's interpretation violates the "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." Colautti v. Franklin, 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979); see, e.g., Weinberger v. Hynson, Westcott & Dunning, Inc., 412 U.S. 609, 633, 93 S.Ct. 2469, 2485, 37 L.Ed.2d 207 (1973); Meade Township v. Andrus, 695 F.2d 1006, 1009 (6th Cir.1982). AFEI's interpretation incorporating the Sec. 3(c)(1)(A) test for beneficial ownership into Sec. 6(a)(3) so that companies need satisfy only the requirements for a Sec. 6(a)(3) exemption to avoid attribution of ownership to all shareholders produces more reasonable results.
 
 
 13
 In 1980, Congress passed the Small Business Investment Incentive Act which added Sec. 3(c)(1)(A)'s exception to attribution for companies whose interest in companies excluded "solely by this paragraph" does not exceed ten percent of their assets. Legislative history does not reveal how Congress intended the phrase "solely by this paragraph" to be interpreted in the context of Sec. 6(a)(3). Congress' evident purpose in amending Sec. 3(c)(1) was to encourage investment in small development companies by making exclusion from the definition of an investment company more available through relaxing the rules for attributing beneficial ownership of securities by a corporation to its shareholders. As Whitman points out, this purpose is not advanced by exempting AFEI from registration; AFEI is not a small development company. Congress did state, however, that the provision amending Sec. 3(c)(1) "would be available to all private investment companies, not just business development companies." H.R.Rep. No. 1341, 96th Cong., 2d Sess. 27, reprinted in 1980 U.S.Code Cong. & Ad.News 4800, 4809. Accordingly, there is no reason to conclude, as Whitman urges us, that Sec. 3(c)(1)(A) should not be applied to avoid attributing ownership of AFEI securities to all AFC's shareholders. Beyond that, legislative history gives no indication how Congress intended Sec. 3(c)(1) and Sec. 6(a)(3) to be interpreted.
 
 
 14
 We hold, therefore, that in the absence of evidence of legislative intent to the contrary and in view of the unreasonable results of Whitman's interpretation, the Sec. 3(c)(1)(A) reference to companies excluded "solely by this paragraph" should be interpreted as referring to companies exempted by Sec. 6(a)(3). In this case, AFC's holdings in all Sec. 6(a)(3) companies, including AFEI, do not exceed ten percent of its assets, so that beneficial ownership of AFEI securities is not attributed to AFC's shareholders under Sec. 3(c)(1)(A). This conclusion agrees with the interpretation of these sections put forward by the SEC in its statement of interest submitted in this case as amicus curiae. Courts ordinarily show great deference to the construction of a statute by the agency charged with its administration. See, e.g., Indiana and Michigan Municipal Distributors Association v. Federal Energy Regulatory Commission, 659 F.2d 1193, 1196 (D.C.Cir.1981); Hill v. Tennessee Valley Authority, 549 F.2d 1064, 1070 (6th Cir.1977), aff'd, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978); Begley v. Mathews, 544 F.2d 1345, 1352 (6th Cir.1976), cert. denied, 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1977). While we are clearly not bound by the SEC's construction of securities laws, we recognize that the SEC is the agency charged with administering the ICA, and we regard its interpretation of the statute with deference.
 
 
 15
 In this case, the interpretation favored by the SEC is the one we would choose independently. Following that interpretation, we find that more than 50% of AFEI's securities are held by one beneficial owner, AFC; accordingly, AFEI satisfies the requirements of Sec. 6(a)(3) and is exempt from the registration requirement of the ICA. We, therefore, affirm the District Court's grant of summary judgment and agree that Whitman cannot compel AFEI to register under the ICA.
 
 
 
 *
 Honorable Philip Pratt, United States District Court for the Eastern District of Michigan, Southern Division, sitting by designation
 
 
 [1]
 Specifically, Whitman alleges that the composition of the board of directors does not satisfy the ICA's requirement that 40% of the members be disinterested, 15 U.S.C. Sec. 80a-10(a), and challenges as improper certain fees paid by AFEI to AFC for various services
 
 
 [2]
 If a statute does not authorize a private right of action, the court should dismiss for failure to state a claim upon which relief can be granted, not for lack of subject-matter jurisdiction. Lewis v. Transamerica Corp., 575 F.2d 237, 239 n. 2 (9th Cir.1978), aff'd in part and rev'd in part on other grounds, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); Wilson v. First Houston Investment Corp., 566 F.2d 1235, 1237 n. 2 (5th Cir.1978), vacated and remanded on other grounds, 444 U.S. 959, 100 S.Ct. 442, 62 L.Ed.2d 371 (1979). "[A] complaint that alleges the existence of a federal question establishes jurisdiction, even though the court ultimately decides that the plaintiff's federal rights were not violated." Mobil Oil Corp. v. Kelley, 493 F.2d 784, 786 (5th Cir.), cert. denied, 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974). This court has subject-matter jurisdiction over this dispute whether or not an implied private right of action is found
 
 
 [3]
 Any company which since the effective date of this subchapter or within five years prior to such date has been reorganized under the supervision of a court of competent jurisdiction, if (A) such company was not an investment company at the commencement of such reorganization proceedings, (B) at the conclusion of such proceedings all outstanding securities of such company were owned by creditors of such company or by persons to whom such securities were issued on account of creditors' claims, and (C) more than 50 per centum of the voting securities of such company, and securities representing more than 50 per centum of the net asset value of such company, are currently owned beneficially by not more than twenty-five persons; but such exemption shall terminate if any security of which such company is the issuer is offered for sale or sold to the public after the conclusion of such proceedings by the issuer or by or through any underwriter. For the purposes of this paragraph, any new company organized as part of the reorganization shall be deemed the same company as its predecessor; and beneficial ownership shall be determined in the manner provided in section 80a-3(c)(1) of this title
 15 U.S.C. Sec. 80a-6(a)(3) (1981).
 
 
 [4]
 That section provides the following description of beneficial ownership:
 Beneficial ownership by a company shall be deemed to be beneficial ownership by one person, except that, if the company owns 10 per centum or more of the outstanding voting securities of the issuer, the beneficial ownership shall be deemed to be that of the holders of such company's outstanding securities (other than short-term paper) unless, as of the date of the most recent acquisition by such company of securities of that issuer, the value of all securities owned by such company of all issuers which are or would, but for the exception set forth in this subparagraph, be excluded from the definition of investment company solely by this paragraph, does not exceed 10 per centum of the value of the company's total assets....
 15 U.S.C. Sec. 80a-3(c)(1)(A) (1981).