**Juan DOE and Maria Roe, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**Alan NELSON, Commissioner of the Immigration and Naturalization Service, Defendant.**

**No. 88 C 6987.**

United States District Court,
N.D. Illinois, E.D.

Dec. 28, 1988.

David Rubman, Craig B. Mousin, Travelers & Immigration Aid, Susan R. Gzesh, Chicago Lawyers' Committee for Civil Rights Under Law, Inc., Chicago, Ill., for plaintiff.

James G. Hoofnagle, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Plaintiffs Juan Doe and Maria Roe applied for legalization under the Immigration Reform and Control Act of 1986. 8 U.S.C. § 1255a *et seq.* Defendant, Alan Nelson, Commissioner of the Immigration and Naturalization Service ("INS"), denied the applications because plaintiffs applied late, in violation of agency regulation 8 C.F.R. 245a.2(a)(2)(i) (the "regulation"). Plaintiffs challenge the validity of this regulation. The INS has moved to dismiss for lack of subject matter jurisdiction.[1] Fed.R. Civ.P. 12(b)(1). For the reasons indicated below, the motion is denied.

## STATUTORY AND REGULATORY BACKGROUND

In 1986, Congress passed the Immigration Reform and Control Act, Pub.L. No. 99–603, 100 Stat. 3359 ("the Act"). As discussed move fully below, the Act represented a comprehensive attempt by Congress to deal with what it perceived as the problems created by the influx of undocumented aliens into this country. Title II of the Act established a one-time only legalization program for aliens who had been living in the country since before January 1, 1982 and who met the specified statutory requirements. *See* 8 U.S.C. § 1255a *et seq.*

The Act established a one year application period for participation in the legalization program. 8 U.S.C. § 1255a(a)(1). The Attorney General designated May 5, 1987 through May 4, 1988 as that year. 8 C.F.R. 245a.2(a)(1). Under the statute, however, one group of aliens was not entitled to the year-long application period. Any alien who was the subject of an Order to Show Cause had to apply for legalization either during the first thirty days of the application period, or within thirty days of the issuance of the Order to Show Cause. 8 U.S.C. § 1255a(a)(1)(B). An Order to Show Cause initiates deportation proceedings against an alien.

On May 1, 1987, four days before the start of the application period, the INS promulgated regulations for the program. One of those regulations provides as follows:

> An alien *who was apprehended by the Service,* or who was the subject of an Order to Show Cause, issued on or after November 6, 1986 and prior to May 5, 1987 and who has established prima facie eligibility for adjustment of status under section 245A(a) of the Act must file an application for adjustment during the period beginning on May 5, 1987 and ending on June 3, 1987.

8 C.F.R. § 245a.2(a)(2)(i), emphasis added.

Plaintiffs say the Act differs from the regulation. According to plaintiffs, the Act provides that only those aliens who are the subject of an Order to Show Cause must file within 30 days, whereas the regulation extends that group to include aliens *apprehended by the Service,* as well as those who are the subject of an Order to Show Cause.

> The Act also contains the following provision: NO REVIEW FOR LATE FILINGS—No denial of adjustment of status under this section based on a late filing of an application for such adjustment may be reviewed by a court of the United States or of any State or reviewed in any administrative proceedings of the United States Government.

8 U.S.C. § 1255a(f)(2).

## FACTS

Plaintiffs Juan Doe and Maria Roe are Mexican citizens who have resided illegally

---

1. The INS also moves to dismiss for failure to state a claim. Its arguments, however, address only subject matter jurisdiction.

in this country since before January 1, 1982. Both were apprehended by the INS after November 6, 1986; neither were served with an Order to Show Cause. Both, in other words, fell within the reach of the regulation since they were apprehended after November 6, 1986. Neither, according to the plaintiffs, fell within the reach of § 1255a(a)(1)(B), however, since they were never the subject of ·an Order to Show Cause.

Both plaintiffs applied for legalization within the year-long application period set by the Act, but outside the 30 day application period set by the regulation. Juan Doe filed one day late, Maria Roe less than one month late. The INS held plaintiffs to the application period established by the regulation and denied both applications on the ground that they were not filed within the 30 day limitation. The INS Legalization Appeals Unit affirmed the denials, also relying on the regulation.

Plaintiffs brought this action in August, 1988. They seek a declaratory judgment that the regulation is illegal. They claim it violates the Act by imposing a condition not contained in the statute. In addition, they claim the regulation denies them due process by imposing a shortened application period without adequate notice. They also seek to enjoin the INS from enforcing the regulation. They have styled their complaint as a class action, claiming to represent all similarly situated aliens. The court, however, does not have before it a motion to certify the class, so this opinion applies only to the named plaintiffs. *National Center for Immigration Rights v. I.N.S.*, 743 F.2d 1365, 1371 (9th Cir.1984).

The INS has moved to dismiss. It contends § 1255a(f)(2), which precludes judicial review for late filing of legalization applications, deprives this court of subject matter jurisdiction. It also contends that this court lacks jurisdiction because plaintiffs have failed to exhaust their administrative remedies, and because the limited review available under the Act can be had only in the Court of Appeals.

The parties have not cited, and this court has not found, any case interpreting the preclusive effect of § 1255a(f)(2) or challenging the validity of 8 C.F.R. 245a.2(a)(2)(i). The question presented in this case is apparently one of first impression.

## NATURE OF THE CLAIMS

As a threshold matter, the parties disagree vigorously over what it is plaintiffs want. The resolution of this dispute is critical to all that follows in this opinion. According to the INS, plaintiffs seek to overturn the individual determinations made in their cases. Plaintiffs disagree and style their complaint as a general challenge to the regulation, independent of the facts in individual cases. Plaintiffs point to their prayer for relief. They do not seek to overturn the individual decisions on their applications, but rather seek a declaration that the regulation is invalid and an injunction preventing its application. The INS, in response, states that the only relief which this court can provide is to rescind the decision in the individual cases—precisely what the statute precludes.

Plaintiffs contend the regulation violates due process by imposing a shortened application period without adequate notice. In addition, they say the INS exceeded its statutory authority when it promulgated and applied the regulation. In this respect, plaintiffs' claim challenges "the methods—not the decision—of the [INS]." *Marozsan v. United States*, 852 F.2d 1469, 1472 (7th Cir.1988) (en banc) (allowing due process challenges to procedures used by Veterans' Administration, despite statutory preclusion of judicial review). The case, therefore, "is not essentially a suit to [achieve legalization]; 'it is a suit to enforce lawful conduct on the part of the [INS].'" *Id.*, quoting *Starnes v. Schweiker*, 715 F.2d 134, 141 (4th Cir.1983).

Contrary to the view pressed by the INS, if plaintiffs are successful in this court, they still may fail to achieve legalized status. What they *would* achieve is a review of their application consistent with the Act and the Fifth Amendment to the Constitution. This court cannot direct the outcome of that review, and plaintiffs would still

have to meet the Act's substantive requirements. 8 U.S.C. §§ 1255a(a)(4); 1255a(b). *Cf. Trinity Memorial Hospital v. Association Hospital Service*, 570 F.2d 660, 667 (7th Cir.1977). But a suit to insure conformity with statutory and constitutional requirements is not the same as a suit challenging the merits of a fact-specific determination in an individual case.

This case is a statutory and constitutional challenge to the validity of the regulation itself, rather than a challenge to the individual determinations of the INS. But that does not close the inquiry. The next question is whether § 1255a(f)(2) bars review of those challenges, and thus deprives the court of subject matter jurisdiction.

## SUBJECT MATTER JURISDICTION

Plaintiffs' statutory claim is based on the Administrative Procedure Act ("APA"); they attack the INS regulation as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). The constitutional claim is based on the Fifth Amendment; the regulation allegedly violates due process by imposing a shortened application period without adequate notice to the persons affected. Plaintiffs base jurisdiction on 28 U.S.C. § 1331 and 8 U.S.C. § 1329.

In *Webster v. Doe*, —— U.S. ——, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), the Supreme Court held that jurisdiction over a statutory claim based on the APA must be analyzed apart from jurisdiction over a constitutional claim. *Id.* 108 S.Ct. at 2053, 2054. Here, jurisdiction over both claims turns on the preclusive effect of 8 U.S.C. § 1255a(f)(2), but, as was the case in *Webster*, Congress may have intended to preclude judicial review of statutory claims brought under the APA and at the same time not intend to preclude review of constitutional claims. Accordingly, the two claims are analyzed separately.

### The Constitutional Claim

■ The Supreme Court has "repeatedly acknowledged 'the strong presumption that Congress intends judicial review of administrative action.'" *Traynor*

*v. Turnage*, —— U.S. ——, 108 S.Ct. 1372, 1378, 99 L.Ed.2d 618 (1988), *quoting Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 2136, 90 L.Ed.2d 623 (1986). Only "clear and convincing evidence of a contrary legislative intent" will overcome this presumption. *Id.* Likewise, as *Webster* makes clear, a court should not lightly infer that Congress intended to preclude judicial review of constitutional claims. The Court requires a "heightened showing" of preclusive intent before it will bar judicial review of a colorable constitutional claim. 108 S.Ct. at 2053.

■ A statute which precludes judicial review does not, by itself, provide clear and convincing evidence that Congress intended to bar review of constitutional claims. *Johnson v. Robison*, 415 U.S. 361, 373–74, 94 S.Ct. 1160, 1168–69, 39 L.Ed.2d 389 (1974); *Block v. Community Nutrition Institute*, 467 U.S. 340, 345, 104 S.Ct. 2450, 2453, 81 L.Ed.2d 270 (1984). Courts have repeatedly allowed constitutional challenges to agency action, despite the presence of a statute barring judicial review. *See, e.g., Marozsan v. United States*, 852 F.2d 1469 (7th Cir.1988) (en banc) (due process challenge to procedures used by Veterans' Administration); *United States v. Emerson*, 846 F.2d 541 (9th Cir.1988) (various constitutional challenges to actions taken by Drug Enforcement Agency); *Patuca v. Secretary of Labor*, 813 F.2d 524 (1st Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987) (equal protection and due process); *Winslow v. Walters*, 815 F.2d 1114 (7th Cir.1987) (due process); *Rodriques v. Donovan*, 769 F.2d 1344 (9th Cir.1985) (due process); *Colonial Penn Ins. Co. v. Heckler*, 721 F.2d 431 (3d Cir. 1983) (due process).

■ Thus, it is not dispositive that the Act contains a provision which precludes judicial review. "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the

administrative action involved." *Block*, 467 U.S. at 345, 104 S.Ct. at 2453.

■ Applying these principles to the Act demonstrates that Congress did not intend to bar consideration of colorable constitutional claims. Initially, no explicit provision of § 1255a(f)(2) bars consideration of constitutional claims. *See Johnson*, 415 U.S. at 367, 94 S.Ct. at 1165; *Marozsan*, 852 F.2d at 1474. The section provides that, if the INS denies an application for adjustment of status because it was filed late, the applicant cannot seek review of the denial. The preclusion thus seems directed to a limited, and straightforward, question: was the application filed on time? The inquiry is a simple one, and if the answer is no, the applicant cannot complain about an adverse decision. (At least, he cannot complain to a federal or state court.) But this is different from a reading which prohibits constitutional challenges to the regulation itself.

The legislative history suggests that Congress had a limited purpose in mind when it restricted judicial review:

Subsection (f) limits judicial and administrative review. A legalization program of the magnitude provided for in this section of the bill is unique in history. The program will provide a substantial benefit to large numbers of persons throughout the United States who are now unknown to government authorities. A major managerial effort will be required to review the applications and assure that applicants qualified to be legalized will actually receive this benefit and that other applicants will not. The Committee is concerned that efforts will be made, on behalf of many persons who are ineligible for the legalization program, to delay the final determinations of their applications. This would prevent not only their own deportation but the expeditious operation of the program for others.

*It is for the purpose of helping to insure reasonably prompt final determinations that subsection (f) provides that there will be no judicial review of a decision or determination made with* *respect to the legalization program.* Moreover, an alien denied adjustment of status under the legalization program may not raise a claim concerning such adjustment in any proceeding of the United States or any State involving the status of such alien. Subsection (f) also provides that there may be no administrative review of a decision or determination made with respect to the legalization program, except that which the Attorney General is required to establish, namely, a single level of administrative appellate review of final determinations concerning applications for legalization.

S.Rept. 99–132, 99th Cong., 1st Sess., 48 (1985) (emphasis added).

It appears Congress included subsection (f) as a way to streamline operation of the legalization program and thereby insure "reasonably prompt final determinations." *Id.* The import of this provision is to bar review of individual decisions on the merits. The merits in most instances will answer the question, "Will legalization be granted?" But plaintiffs do not seek review of the merits of the decision in their cases. They challenge the constitutionality of the procedure and regulations used in arriving at a decision on the merits. Nothing in the legislative history supports a bar of that procedural claim.

There is no reason to believe that allowing courts to review constitutional claims will undermine the Congressional goal of prompt, efficient determinations. Indeed, the judicial experience with other statutes is to the contrary. In *Traynor*, for instance, the Court observed that only eight challenges have been filed in the four Circuits which allow statutory challenges to Veterans' Administration regulations. 108 S.Ct. at 1379 n. 9. Constitutional challenges should be no more burdensome, since a frivolous constitutional claim is insufficient to invoke federal jurisdiction. *See Marozsan*, 852 F.2d at 1483 (Posner, J., concurring).

Furthermore, the constitutional challenge in this case does not challenge the adequacy of procedures used in an individual case, such as a failure to provide a

hearing. *Cf. Winslow v. Walters*, 815 F.2d 1114, 1117 (7th Cir.1987). Instead, it challenges, across the board, the notice given to a putative class of applicants. The difference is important. In the former case, infinite variations in the facts invite endless litigation; failure by one plaintiff does not prevent the next from attempting to transform a "run-of-the mine procedural challenge" into a constitutional claim. *Marozsan*, 852 F.2d at 1483 (Posner, J., concurring). But in this case, plaintiffs challenge the adequacy of the notice given, and regulation applicable, to an entire class, without regard to the facts in individual cases. In that posture, the threat of repetitive litigation is substantially lessened. *See Bowen*, 476 U.S. at 680–81 n. 11, 106 S.Ct. at 2141–42 n. 11; Note, *Congressional Preclusion of Judicial Review of Federal Benefit Disbursement: Reasserting Separation of Powers*, 97 Harv.L.Rev. 778, 792 (1984).

The court has jurisdiction over plaintiffs' constitutional claim.

### The Statutory Claim

The next question is whether Congress intended that § 1255a(f)(2) should be read to bar statutory challenges brought directly under the APA. Plaintiffs' claim under the APA is that in passing the regulation the INS violated the statute and exceeded its own authority. Federal courts bear the ultimate responsibility for interpreting federal statutes, *see, e.g., Meade v. Township v. Andrus*, 695 F.2d 1006, 1009 (6th Cir.1982), and an agency may not promulgate regulations which thwart the statutory scheme they were designed to implement. *See Jochum v. Pico Credit Corp. of Westbank, Inc.*, 730 F.2d 1041, 1047 (5th Cir.1984); *Insurance Co. of North America v. Gee*, 702 F.2d 411, 414 (2d Cir.1983); *Andrus*, 695 F.2d at 1009–10; *University of Maryland v. Cleland*, 621 F.2d 98, 100–01 (4th Cir.1980). Indeed, § 1255a(f)(2) is inapplicable to this claim, since as demonstrated above, that provision is intended only to bar review of individual determinations, something not sought in this case. *Cf. Marozsan*, 852 F.2d at 1472 ("When the issue is 'not whether the Administrator's decision ... in a particular

case was right or wrong, but rather whether the Administrator had acted consistently with his grant of authority or had exceeded his authority'", statutory preclusion does not apply).

The analysis in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) is instructive. There, the Court considered the challenge by a group of physicians to the validity of a federal regulation implementing the Medicare statute. 476 U.S. at 668, 106 S.Ct. at 2135. The physicians brought statutory and constitutional claims under the APA, alleging that the regulation violated several provisions of the Medicare statute. The government, however, argued that the District Court lacked subject matter jurisdiction, since review was expressly precluded by a provision of the statute. *Id.* at 668–69, 78, 106 S.Ct. at 2135–36, 2140. That provision read:

> The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. *No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.*

*Id.* at 679, 106 S.Ct. at 2140, *quoting* 42 U.S.C. § 405(h) (1982 ed., Supp. II) (emphasis added).

Despite the clear language of this provision, the Court concluded without dissent that the statute did not bar challenges to the validity of the Secretary's regulations. The legislative history, just as in this dispute, indicated a desire to prevent review of determinations in individual cases. But neither the statute nor the legislative history suggested that substantial statutory and constitutional challenges are nonreviewable. *Id.* at 680, 106 S.Ct. at 2141. Characterizing the government's contrary view as "an extreme position", the Court concluded, "We ordinarily presume that Con-

gress intends the executive to obey its statutory commands and, accordingly, that it expects the courts to grant relief when an executive agency violates such a command. That presumption has not been surmounted here." *Id.* at 681, 106 S.Ct. at 2141. Nor here.

## EXCLUSIVE COURT OF APPEALS JURISDICTION

In the alternative, the INS argues that the Court of Appeals has exclusive jurisdiction to review deportation proceedings, and thus this court lacks jurisdiction.

Section 1255a(f)(4) of the Act provides "[t]here shall be judicial review of such denial [of legalization applications] only in the judicial review of an order of deportation under section 1105a of this title." Section 1105a in turn provides that judicial review of a "final order" of deportation can be had only in the Court of Appeals. The INS argues from these provisions that only the Seventh Circuit has jurisdiction over plaintiffs' claims. Plaintiffs respond that exclusive review in the Court of Appeals under § 1105a is appropriate only when the alien challenges the result of an individual deportation order. Their allegations, by contrast, challenge the legality of application of the regulation. Section 1105a, in their view, has no relevance to these claims.

Principal support for plaintiffs' position comes from *Salehi v. District Director, I.N.S.,* 796 F.2d 1286, 1290–91 (10th Cir. 1986) and *Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1033 (5th Cir.1982), *rev'd sub nom. on other grounds, Jean v. Nelson,* 727 F.2d 957 (11th Cir.1984) ("HRC"). In *HRC,* the plaintiffs raised a host of constitutional challenges to the procedures used by the INS in processing asylum applications filed by plaintiffs. Jurisdiction, as in this case, was grounded on 28 U.S.C. § 1331 and 8 U.S.C. § 1329. The district court summarized the allegations as follows:

> The plaintiffs are not trying to litigate the merits of any single decision of INS or a particular immigration judge. Rather, the gravamen of the plaintiffs' complaint is that INS instituted a program "to achieve exedited mass deportation of Haitian nationals" (Complaint, ¶ 3) irrespective of the merits of an individual Haitian's asylum application and without regard to the constitutional, treaty, statutory, and administrative rights of the plaintiff class.

676 F.2d at 1026, *quoting Haitian Refugee Center v. Civiletti,* 503 F.Supp. 442, 457 (S.D.Fla.1980). On appeal, the INS relied on § 1105a to challenge the jurisdiction of the district court. The court disagreed:

> Although a court of appeals may have sole jurisdiction to review alleged procedural irregularities in an individual deportation hearing *to the extent these irregularities may provide a basis for reversing an individual deportation order,* that is not to say that a program, pattern or scheme by immigration officials to violate the constitutional rights of aliens is not a separate matter subject to examination by a district court and to the entry of at least declaratory and injunctive relief. The distinction we draw is one between the authority of a court of appeals to pass upon the merits of an individual deportation order ... and, on the other hand, the authority of a district court to wield its equitable powers when a wholesale, carefully orchestrated, program of constitutional violations is alleged.

*Id.* at 1033, emphasis in original.

To the same effect is *Salehi.* There the court considered plaintiffs' constitutional and statutory challenges to INS procedures governing motions to reopen asylum proceedings. The INS challenged subject matter jurisdiction, relying on § 1105a. The court rejected the challenge, concluding that plaintiffs "do not seek review or directly attack the validity of a final order of deportation.... [Rather], their claims constitute a general attack upon the regulations and do not involve appeals from denials of motions to reopen or determinations made incident to a motion to reopen." 796 F.2d at 1290. Jurisdiction was therefore proper under both the general jurisdictional grants, 28 U.S.C. § 1331 and 8 U.S.C.

§ 1329, as well as the habeas statute, 8 U.S.C. § 1105a(a)(9).[2]

In addition, the court of appeals in *Salehi* distinguished plaintiffs' claims from those barred in *INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). There the Supreme Court construed the term "final order" in § 1105a to include "all matters on which the validity of the final order is contingent, rather than only those determinations actually made at the hearing." *Id.* at 938, 103 S.Ct. at 2777. In *Chadha,* the plaintiff's deportation "stands or falls on the validity of the challenged veto" and the relief Chadha sought in the courts was an invalidation of the deportation order. Consequently, the Supreme Court ruled that the Court of Appeals had exclusive jurisdiction, pursuant to § 1105a. *Id.* at 938–39, 103 S.Ct. at 2777–78. In *Salehi,* however, a successful due process claim would not guarantee success on the merits of their asylum claim. In that respect, the deportation orders "in no way 'stand or fall' upon the outcome of their claims here." 796 F.2d at 1291. *See also National Center for Immigration Rights v. I.N.S.,* 743 F.2d 1365, 1368 (9th Cir.1984) (district court has jurisdiction under 28 U.S.C. § 1331 and 8 U.S.C. § 1329, and § 1105a is inapplicable, when alien raises statutory and constitutional challenges to INS regulation, rather than a challenge to the merits of an individual INS determination).

The INS seeks to distinguish these cases. First, INS points out that the court in *HRC* expressly warned that its holding "is not to be construed as permitting a constitutional challenge in the district court based on a procedural ruling in a deportation proceeding with which an alien is dissatisfied. We refuse to condone any such end-run around the administrative process." 676 F.2d at

1033. Also, the court cautioned that the permissible scope of review was limited to the constitutional claims, and did not extend to the merits of any deportation proceeding. *Id.,* n. 23. INS also points out that *HRC* was a class action involving over 4,000 asylum applicants, whereas this case, so far, involves only two plaintiffs. Next, the INS says *Salehi* and *N.C.I.R.* are distinguishable because the claims involved did not effect the validity of individual deportation orders. In this case, by contrast, INS claims "the practical effect of plaintiffs' success ... necessarily would involve review of their particular denials."

These distinctions are without merit. Essential to each of them is the contention that plaintiffs seek review of their individual claims. But, as indicated earlier, that is incorrect. Like the plaintiffs in *N.C.I.R.,* *Salehi,* and *HRC,* plaintiffs challenge "the methods—not the decision—of the [INS]." *Marozsan,* 852 F.2d at 1472. The fact that the court has not yet passed upon the class allegations is of no import. As an initial matter, plaintiffs allege in their complaint that this case meets the requirements of a class action, including numerosity. Furthermore, the INS cannot seriously argue that a pattern of constitutional violations becomes intolerable only once a threshold number of people are victimized. *Salehi,* in fact, involved only three plaintiffs. Furthermore, like the plaintiffs in *Salehi,* plaintiffs here do not run afoul of *Chadha.* Success on the claims in this court will not automatically predetermine the result of their legalization application. Rather, as noted earlier, it will only require that the application be evaluated according to statutory provisions. Thus the applications do not "stand or fall" on the results of this case.[3]

---

**2.** Plaintiffs here do not rely on habeas jurisdiction.

**3.** The INS also claims that *HRC* has been impliedly rejected by a case of the successor Eleventh Circuit, *Garcia–Mir v. Smith,* 766 F.2d 1478 (11th Cir.1985). However, *Garcia–Mir,* unlike this case, involved a class of excludable, rather than deportable aliens. Excludable aliens "have fewer rights than do deportable aliens, and those seeking initial admission to this country

have the fewest of all.... They 'have no constitutional rights with regard to their applications, and must be content to accept whatever statutory rights and privileges they are granted by Congress.'" *Id.* at 1484, *quoting Jean v. Nelson,* 727 F.2d at 968. Second, plaintiffs in *Garcia–Mir* sought review of individual deportation proceedings, and did not challenge the uniform application of an illegal regulation, as plaintiffs do here. *Id.* at 1481, 1486–89.

One point raised by the INS is more substantial. The court in *HRC* recognized that plaintiffs cannot simply style their complaint as a procedural challenge and thereby avoid the effect of § 1105a. The Seventh Circuit and this court have both relied recently on this admonition to deprive the district court of subject matter jurisdiction in a claim against the INS. *Kashani v. Nelson*, 793 F.2d 818, 823 (7th Cir.), *cert. denied*, 479 U.S. 1006, 107 S.Ct. 644, 93 L.Ed.2d 701 (1986); *Saleh v. Meese*, 669 F.Supp. 885, 887–89 (N.D.Ill.1987). In both cases, however, the facts made it clear that plaintiffs' claims challenged no general practice or provision of the statute; *HRC* then was simply inapplicable.

The concern expressed by the court in *HRC* is the same one recently raised by Judge Posner in *Marozsan:* that "run-of-the mine procedural challenges dressed up as constitutional claims" will inundate the district courts and defeat the objects of the statute. 852 F.2d at 1483 (Posner, J., concurring). This is a legitimate fear, but not one raised by this case. Plaintiffs claim the INS uniformly, without regard to the facts in an individual case, applied an illegal regulation and failed to give adequate notice to affected parties.

Plaintiffs' position is supported by a number of recent district court decisions. In *Haitian Refugee Center, Inc. v. Nelson*, 694 F.Supp. 864 (S.D.Fla.1988), plaintiffs sued to enjoin the INS from employing improper procedures in the adjudication of legalization applications. Similar to plaintiffs here, the individual plaintiffs in *Haitian Refugee Center* had applied for legalization under a provision of the Act and were denied. Several had their denials affirmed by the Legalization Appeals Unit. In the district court, the INS challenged the court's jurisdiction, relying on a provision in the Act which limited judicial review to that allowed by § 1105a. *Id.* at 866, 868, 872–73. The court rejected the challenge and upheld jurisdiction. Following *HRC,* the court observed that since "[t]he plaintiff's complaint ... does not challenge any individual determination of any application ... but rather attacks the manner in which the entire program is being implemented," § 1105a did not bar jurisdiction. *Id.* at 873. "In the case before this court, plaintiffs allege that defendants have exceeded their authority by illegal implementation of stated congressional intent. To deny jurisdiction would be to allow agency action to go unchallenged." *Id.* at 874. The same can be said here.

In accord is *Vargas v. Meese*, 682 F.Supp. 591 (D.D.C.1987), where plaintiffs sued to enjoin enforcement of an INS regulation. As with plaintiffs here, plaintiffs in *Vargas* claimed the regulation violated a provision of the Act by imposing a filing deadline which did not appear in the statute. The INS challenged plaintiffs' failure to exhaust, but the court rejected the challenge, stating that the statutory limitation of judicial review had no application to plaintiffs' claim. *Id.* at 597. *See also Hernandez v. Meese*, No. 8–88–385, —— F.Supp. ——, —— (E.D.Cal. Aug. 11, 1988), slip op. at 14 (Since "plaintiffs do not seek review of individual applications, but rather, assert systemic defects in the adjudication process", exclusive review in Court of Appeals inapplicable); *Zambrano v. I.N.S.*, No. S–88–455 (E.D.Cal. Aug. 9, 1988), slip op. at 6–7 ("[B]ecause this is not a challenge to an agency order denying an individual application for legalization, the statutory requirements of IRCA [the Act] providing for limited judicial review are inapplicable.").[4]

---

**4.** The INS also claims plaintiffs have failed to exhaust their administrative remedies. The doctrine of exhaustion is not jurisdictional; it is a matter within the court's discretion. Exhaustion serves no purpose in this case. The facts are not in dispute and the record is fully developed. The questions presented are purely legal and require the court to determine the legality of the regulation and the adequacy of notice, not the decision, of the INS. The dispute in this court is collateral to the merits of the legalization application. *See Bowen v. City of New York,* 476 U.S. 467, 483, 106 S.Ct. 2022, 2031, 90 L.Ed.2d 462 (1986). Nothing in this case calls upon the court to substitute its own judgment for that of the INS. Rather, plaintiffs ask the court to do what is the quintessential role of a federal court: interpret a federal statute. Plaintiffs need not exhaust. *See Jean v. Nelson*, 711 F.2d 1455, 1506 (11th Cir.1983); *HRC*, 676 F.2d

IT IS THEREFORE ORDERED that:

(1) Defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

(2) Plaintiffs are directed pursuant to Fed.R.Civ.P. 23(c)(1) to move for certification of an appropriate class "as soon as practicable." *Bieneman v. City of Chicago,* 838 F.2d 962, 964 (7th Cir.1988).

(3) A status hearing is set for January 17, 1989 at 9:15 a.m.

at 1034; *Ali v. I.N.S.,* 661 F.Supp. 1234, 1243–44 (D.Mass.1986); *Zambrano,* slip op. at 7.

The INS' reliance on *Dhangu v. I.N.S.,* 812 F.2d 455, 460 (9th Cir.1987) is misplaced since the facts in *Dhangu* remained in dispute, unlike the facts here. In addition, the due process challenge in *Dhangu* was to an INS regulation that allowed a hearing to proceed with the alien in absentia. Plaintiff alleged that his hearing was unfair as a result of his absence. The Ninth

Circuit concluded that exhaustion was appropriate since the Board of Immigration Appeals could rectify the defect in a subsequent hearing. *Id.* at 460–61. In this case, however, no amount of additional hearings can cure the fact that plaintiffs' did not apply on time. If the regulation at issue in this case is valid—and the court has not yet addressed that question—then more hearings will not lead to a different result.